No. 19,714.

THE CITY OF ENGLEWOOD, ET AL. *v.*
B. B. WRIGHT, ET AL.
(364 P. [2d] 569)

Decided August 28, 1961.   Rehearing denied September 18, 1961.

Mr. JOSEPH W. ESCH, for plaintiffs in error.

Messrs. CREAMER & CREAMER, for defendants in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THE question to be resolved is whether a "license tax" imposed by the City of Englewood on any person who "rents, leases or otherwise provides" residential or commercial property is valid and constitutional. The trial court held this "license tax" to be unconstitutional and therefore "null, void and of no effect," and accordingly enjoined Englewood from enforcing the ordinance in question as it relates and pertains to the renting of residential or commercial properties. By writ of error Englewood seeks reversal of this judgment.

In 1956 the City Council of Englewood passed Ordinance No. 17 which purported to establish and impose a "business and occupational license tax for the purpose of raising municipal revenue and licensing and regulating the carrying on of *all* business, trades, occupation, and professions within the City of Englewood." (Emphasis supplied.) The ordinance in so many words stated its purpose was to provide additional revenue to meet the increase in the cost of city government occasioned by the rising unit costs of all existing services and the obligation to provide additional and improved services. The avowed intent of the ordinance was that "all income-producing business, trades, occupations and professions located and performed, within the City of Englewood shall be subject to a Business and Occupational Tax under this Ordinance." Accordingly, the ordinance decreed that a license tax should be paid by such diverse business, trades, occupations and professions as banks, dancing schools, junk dealers, ambulance firms, circuses, real estate agencies, physicians, dentists, and attorneys. The present action involves only those persons who rent

residential or commercial properties, and does *not* pertain to any other business sought to be taxed by this ordinance.

Section 4 of Ordinance No. 17 states that " * * * any of the following businesses * * * shall pay the license tax hereinafter specified * * *," and Group I in said section reads as follows:

"Group I: RENTAL UNITS:

"Sub-Group 1: Residential rental units:

" (a) Any person who rents, leases or otherwise provides one or more residential units for hire shall be subject to a tax of $3.00 per unit per year.

" (b) A residential unit shall be construed, by way of illustration, to mean a house, duplex, apartment hotel room, motel room, or other like unit, in which a person or family resides, either transiently or permanently.

"Sub-Group 2: Commercial Rental units:

" (a) Any person who rents, leases or otherwise provides any number of commercial rental units for hire shall be subject to a tax of $4.00 per unit per year.

" (b) Commercial rental units shall be construed to be any type of premises or units rented for business purposes, not including units in which persons or families reside, as defined in Sub-Group 1 (b) above.

" (c) This tax shall not be construed to be a tax on persons who pay rent or occupy rental units owned or leased for rental purposes by other parties."

The plaintiffs are seven persons who brought the present action not only for themselves but for all others similarly situated. Each of the seven owns and rents either residential or commercial property, or both, all situate in Englewood. Two of these seven are residents of Denver, the others all residing in Englewood. Apparently the plaintiffs paid the license tax for 1956 through 1959, but in 1960 refused to pay the tax and brought the present action, seeking to have the ordinance as it applies to them declared unconstitutional and to enjoin Englewood from collecting the tax.

In their complaint plaintiffs alleged that the tax sought to be collected is not *truly* a business or occupational tax, but actually an income tax in only slight disguise, or, if not an income tax, then a tax on real property, and in either event under the circumstances beyond the taxing power of Englewood. Also, it is averred, the tax is discriminatory in nature, and finally that the section of the ordinance which provides for a fine or imprisonment in jail for a violation thereof contravenes the constitutional prohibition against imprisonment for civil debt.

By answer Englewood generally alleged and contended that the portion of Ordinance No. 17 here under attack is constitutional, and by its counterclaim sought money judgment against each of the plaintiffs for the license tax due for 1960.

Evidence adduced on trial was brief and not in conflict. Some, but not all, of the plaintiffs appeared and testified as to their ownership and renting of residential and commercial properties situate in Englewood. Englewood, in support of its counterclaim, called its deputy clerk and treasurer who testified that the plaintiffs Wright owed as their license tax for 1960 the sum of $28.00; the plaintiffs Holland similarly owed $12.00; the plaintiff Hagge $6.00, but that the plaintiffs Powell had already paid in full their 1960 tax.

Some weeks after the conclusion of the trial proper, the trial court entered written findings, wherein it held, inter alia, (1) that the tax attempted to be extracted from these plaintiffs is either an income tax or a tax on real property, but in any event definitely not a business or occupational tax; (2) that the City of Englewood is "without power to levy an income tax of any kind, such power being reserved to the general assembly under Article X, Section 17 of the Constitution of Colorado"; (3) that if this be a tax on real property, "it is directly in violation of the Statutes of the State of Colorado and is null, void, and of no effect as violative of said Article XX of the Constitution of Colorado for the reason that

provisions for taxation of real property àre of statewide concern and are controlled by Statutes of the State of Colorado, rather than by local or municipal ordinances"; (4) that said ordinance is unconstitutional in that it arbitrarily discriminates between commercial and residential rentals and "capriciously and discriminatorily" imposes a higher rate on the former; and (5) that the right to rent one's property and to derive the monetary advantage therefrom is an "inalienable right and incident of the ownership of real property" and, as such, not subject to the power of Englewood to impose a license tax thereon. Whereupon the trial court declared the ordinance as it relates to the renting of residential or commercial property "null, void, and of no effect" and enjoined Englewood from enforcing the same. Englewood now seeks reversal of the judgment.

At the outset it should be stated that the City of Englewood, which at the time Ordinance No. 17 was passed was a city of the second class, but which in 1958 became a home-rule city, has the undoubted power to impose a business or occupational tax for the sole purpose of raising revenue. See C.R.S. '53, 139-78-3 (2), Article XX of the Colorado Constitution, and Sections 5 and 78 of the City Charter for the City of Englewood. Indeed, such is conceded by plaintiffs, who do not contest the power of Englewood to impose a business or occupational tax, but strongly urge that the proposed tax on the renting of property is *not* really a business or occupational tax, but is something else, either an income tax or a tax on real property.

It having been admitted that Englewood does have the authority and power to impose a business or occupational tax, the next question is whether those who rent residential or commercial property are thereby engaged in a business. If such persons are engaged in a business, then it must follow that they are subject to the tax. We now hold that the renting of residential or commercial property is a "business" and as such is subject

to the power to impose a business or occupational tax.

A thoughtful analysis of what is involved in the renting of residential or commercial property reveals that such activity is a business. For example, it is common knowledge that many so-called luxury apartments have been recently erected in the Metropolitan Denver area. Frequently these are owned and operated by a corporation. The individual apartments command most substantial rentals. The owner occasionally renders some incidental services, such as maid service, porter service, switchboard service, and the like. From the gross income is deducted the cost of operation and maintenance and the net profit is then distributed to the stockholders, who, of course, have the right to expect a return on their investment. To contend that such a corporation is not engaged in business is to blind oneself to reality. And, to be consistent, it must also follow that an individual person who, for example, owns a duplex, and resides in one half thereof and rents the other half, is also engaged "in business." The difference between an individual renting half of his duplex and the corporation renting numerous apartments is one of degree only. Either both are in business, or neither is.

In *Flint v. Stone Tracy Company*, 220 U.S. 107, the Supreme Court of the United States upheld the constitutionality of an excise tax imposed by Congress on corporations engaged "in business," and in that opinion in considering what constitutes "doing business" said:

" * * * It remains to consider whether these corporations are engaged in business. * * * 'Business is a very comprehensive term and embraces everything about which a person can be employed. * * * That which occupies the time, attention and labor of men for the purpose of livelihood or profit.'

· *"We think it clear that corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings,* making investments of profits, or *leas-*

*ing ore lands* and collecting royalties, managing wharves, dividing profits, and in some cases investing the surplus, *are engaged in business* within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law." (Emphasis supplied.)

Also in *State v. Heymann,* 178 La. 479, 151 So. 901, the Supreme Court of Louisiana cited with approval *Flint v. Stone Tracy Company,* supra, and in so doing held that: " * * * the operating or managing of an office building, *"whether by the owner or by a lessee of the building,* is now well recognized as the carrying on of an occupation or business." (Emphasis supplied.)

In *District of Columbia v. Wardell,* 122 F. (2d) 203, it was determined that rents received from the operation of three apartment houses and an office building were derived from a "business" or "commercial activity" within the meaning of the District of Columbia Revenue Act which imposed a business privilege tax measured by gross receipts for the carrying on for gain or economic benefit of any business or commercial activity. To the same effect, see *Littlehales v. District of Columbia,* 130 F. (2d) 402.

*Walker v. Bedford,* 93 Colo. 400, 26 P. (2d) 1051, also sheds light on the problem of determining the true nature of the present tax. In that opinion it was said:

"The principal difficulty is to determine the nature of the imposition made by the act. The General Assembly has denominated it a fee, but as has many times been held the language of the legislature is not determinative. The distinction between a property tax and an excise tax is not determined by the style of the enactments, but by the differences which exist and when, as here, it is thought that the two nearly approach each other, they may usually be distinguished by the respective methods adopted of laying them and fixing their amount. * * * Thus, when the tax is imposed directly by the legislature without assessment, and is *measured by the extent a privilege is exercised by the taxpayer without regard to*

*the nature or value of his assets, it is an excise tax;* but if the tax is computed upon a valuation of property and assessed by assessors, although a privilege may be included in the valuation, it is a property tax." (Emphasis supplied.)

See also, *California Co. v. Colorado,* 141 Colo. 288, 348 P. (2d) 382.

On the basis of these authorities, and after considering the nature of the specific activity involved in the renting of commercial or residential property, it seems clear that the renting of residential or commercial property is a "business," and is subject to the power of Englewood to impose a business or occupational tax thereon.

It having been determined that Ordinance No. 17 is a true business or occupational tax, it follows that it is *not* an income tax nor a tax on real property. And the fact that the business necessarily involves and concerns realty does not change the nature of the tax. In *Commonwealth v. Hazel* (Ky.), 159 S.W. 673, it was held that those who purchase land at tax sales are subject to a business or occupational tax. Also, in *City of Los Angeles v. Rancho Homes,* 40 Cal. (2d) 764, 256 P. (2d) 305, it was held that one who acquires realty and then improves, subdivides and sells the land for building sites is also engaged in a business which can be subjected to an occupational tax. In *State v. United Fruit Co.* (La.), 152 So. 915, it was held that a corporation, which owned an entire building and occupied a part of it in conducting its own business, was also engaged in the business of "operating an office building and deriving revenue therefrom" when it rented the surplus office space in its building to others, and was therefore subject to a license tax.

In *State v. Heymann,* supra, many of the identical contentions here advanced by the defendants in error were considered and rejected by the Supreme Court of Louisiana. In that case the State of Louisiana imposed a

license tax on the business of operating an office building. The owner and operator of an office building in New Orleans resisted this tax, contending that the "right of a property owner to rent his property to others and to receive the rent is an inherent right, or attribute of ownership, which the Legislature must recognize and not a privilege for which the Legislature may exact a license tax"; that the tax sought to be imposed "is not in fact a license tax, but an income tax"; and that "if the tax sought to be imposed is not an income tax, it is a tax upon the income from real estate, which is in effect a direct tax upon the property itself" and the pretended enactment did not comply with the various statutory and constitutional provisions pertaining to such a tax. As was mentioned, supra, these contentions were rejected in toto and a license tax on the business of operating an office building was held constitutional.

Having determined that the renting of residential or commercial property is a "business" and therefore a proper subject for a license tax, and additionally that simply because the "business" relates and pertains to realty does not change the nature of the tax, such is virtually dispositive of the entire writ of error. Many of the identical objections raised in the instant case were also urged, but rejected, in *Jackson v. Glenwood Springs,* 122 Colo. 323, 221 P. (2d) 1083; *Ping v. Cortez,* 139 Colo. 575, 342 P. (2d) 657, and *Post v. City of Grand Junction,* 118 Colo. 434, 195 P. (2d) 958. In each of these three cases a municipal business or occupational tax was attacked on the ground that it offended the State and Federal Constitutions in many particulars, some of which were as follows: (1) that the ordinance under consideration violated the equal protection and due process clauses; (2) that it impinged on the constitutionally protected right to acquire property; (3) that such was in fact a direct tax on property and was not levied nor assessed in the manner prescribed by the State Constitution; (4) that the classifications provided by the par-

ticular ordinance were arbitrary and discriminatory; and (5) that the penalty provided by the ordinance permitted the imposition of a jail sentence, in violation of the prohibition against imprisonment for civil debt. All of the contentions were held to be without merit, and without quoting at length from those well-reasoned opinions, we now reaffirm their rationale, as well as the result reached.

Finally, plaintiffs alleged, and the trial court found, that there was discrimination between the tax on commercial and resident rentals, the former calling for the payment of a $4.00 tax per unit per year, and the latter $3.00 per unit per year. No evidence was offered in support of this allegation and such being the state of the record the contention fails for lack of proof. Indeed the distinction between the two different types of rentals seems, on its face at least, to be a most reasonable classification based on a valid difference or distinction.

Accordingly, the judgment of the trial court is reversed and the cause remanded with directions to vacate the judgment and enter a judgment declaring Ordinance No. 17, Series of 1956, as it applies to the rental of commercial or residential property to be constitutional, valid and enforceable, and also to enter judgment for Englewood on its counterclaim against the Wrights for $28.00, against the Hollands for $12.00, and against Hagge for $6.00, with interest thereon from the date the tax became delinquent to the date of entry of the judgment. Judgment shall also enter for Englewood and against all plaintiffs for costs.

MR. JUSTICE DAY not participating.