No. 23940.

The City and County of Denver, a municipal corporation; The Board of Councilmen of The City and County of Denver, sometimes also known and referred to as The City Council of The City and County of Denver, and Robert B. Keating, John F. Kelly, Irving S. Hook, Paul A. Hentzell, Kenneth A. MacIntosh, Carl N. DeTemple, Edward F. Burke, Jr., Elvin R. Caldwell, Ernest P. Marranzino, as the members of and being and constituting The Board of Councilmen of The City and County of Denver, sometimes also known and referred to as The City Council of The City and County of Denver, and Charles L. Temple, as Manager of Revenue of The City and County of Denver v. Duffy Storage and Moving Co.; James A. Duffy; George F. Simone; Denver Auto Trimming Supply Co.; Houston Gibson; Winslow Crane Service Co.; Thomas & Son Transfer Line, Inc.; and Ridge Erection Co.

No. 23941.

Duffy Storage and Moving Co.; James A. Duffy; George V. Simone; Denver Auto Trimming Supply Co.; Houston Gibson; Winslow Crane Service Co.; Thomas & Son Transfer Line, Inc.; and Ridge Erection Co. v. The City and County of Denver, a municipal corporation; The Board of Councilmen of The City and County of Denver, sometimes also known and referred to as The City Council of The City and County of Denver, and Robert B. Keating, John F. Kelly, Irving S. Hook, Paul A. Hentzell, Kenneth A. MacIntosh, Carl N. DeTemple, Edward F. Burke, Jr., Elvin R. Caldwell, Ernest P. Marranzino, as the members of and being and constituting The Board of Coun-

92

CILMEN OF THE CITY AND COUNTY OF DENVER, SOMETIMES ALSO KNOWN AND REFERRED TO AS THE CITY COUNCIL OF THE CITY AND COUNTY OF DENVER, AND CHARLES L. TEMPLE, AS MANAGER OF REVENUE OF THE CITY AND COUNTY OF DENVER.

(450 P.2d 339)

Decided February 5, 1969.    Rehearing denied February 17, 1969.

Max P. Zall, City Attorney, W. Keith Peterson, Assistant, Earl T. Thrasher, Assistant, for City and County of Denver, et al.

Creamer & Creamer, George Creamer, for Duffy Storage and Moving Co., et al.

Kenneth G. Bueche, General Counsel for the Colorado Municipal League, Amicus Curiae.

Gordon D. Hinds, City Attorney, City of Pueblo, Amicus Curiae.

Herman H. Feldman, for Air Line Pilots Association, Amicus Curiae.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Two writs of error are involved herein. They are directed to two determinations entered by the trial court in a declaratory judgment suit filed in Denver district court by several corporate and individual plaintiffs for

themselves and as representatives in a class action. The City and County of Denver and the individual city office-holders named as defendants and appearing herein both as plaintiffs and defendants in error will be referred to collectively as Denver. The plaintiffs below will be referred to as such. They too are here as both plaintiffs and defendants in error.

Plaintiffs challenge the legality of three city ordinances enacted by the Denver City Council. Two of them — Ordinances No. 232 and No. 233 — already are in effect and have been since January 1, 1969. One — Ordinance No. 234 — is by its terms to become effective on March 31, 1969. A declaration of invalidity as to all of them was sought by plaintiffs, with the prayer that a permanent injunction issue restraining Denver from enforcing any or all of the ordinances. Judgment of the court was entered granting relief as prayed only as to Ordinance No. 234, Series of 1968. And to this Denver brought writ of error. The court decreed that Ordinances No. 232 and 233 were valid and enforceable and entered judgment dismissing the complaint as to those two ordinances. To this plaintiffs brought writ of error.

We elected to consolidate both writs of error for oral argument. We consolidate the cases in this opinion, separating, however, the ordinances as affected thereby, and the disposition of the several issues involved.

■ We state at the outset that what is not involved or intended to be covered in this decision are the rights, exemptions and immunities of the individual employers and employees as they may believe their respective positions to be under the definitions in and the terms of the ordinances. This is by reason of the stipulation of the parties that:

"Plaintiffs, in their said representative capacity, do not act with relation to any special circumstance or matters with relation to the subject ordinances, or any of them, as they may affect particular individuals * * *."

We further add that with reference to the myriad

administrative questions which may arise as to the named plaintiffs in their individual capacities or as to other individuals similarly situated relating to their special circumstances under the ordinances held to be valid, there is provided in these ordinances administrative procedures which must be exhausted before review may be had in the courts.

Also we further state that *what we do hold herein* is limited as provided in the stipulation to the "questions of power, jurisdiction and authority [of Denver] to pass and enforce the several ordinances and the taxes and impositions asserted to be made by them."

SUPREME COURT NO. 23940

THE QUESTIONS AS TO ORDINANCE NO. 234

■ This ordinance is entitled "Earnings Tax." We need not summarize its provisions nor analyze them. Denver concedes that it is an income tax, and further admits that if we were to adhere to a 1958 decision of this court it is an invalid ordinance under our holding in *Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441. In the *Sweet* case this court held that article X, section 17, of the Colorado constitution vests exclusive nondelegable power in the General Assembly to levy income taxes and that Denver was therefore without power to enact an ordinance imposing an income tax. Denver takes the unequivocal position that this court was wrong in *Sweet* and urges — yea pleads vehemently — in its argument that we overrule that decision.

Denver reiterates the arguments now that were presented in the *Sweet* case, plus advancing its reasons as to why it believes the decision was erroneous. On the other hand, plaintiffs present detailed and lengthy arguments as to why *Sweet* was and is a correct decision. We decline to reargue or rediscuss the several issues raised in *Sweet*. We adhere to the *Sweet* decision under the doctrine of stare decisis.

■ What we consider to be a rather general statement of the purposes of stare decisis is to be found in

*Creacy v. Industrial Commission,* 148 Colo. 429, 366 P.2d 384, wherein this court stated:

"* * * Under the doctrine of stare decisis courts are very reluctant to undo settled law. This doctrine has for its object, uniformity, certainty, and stability of the law and the rights acquired thereunder. * * *"

That the doctrine of stare decisis is firmly embedded in Colorado law may be gleaned from the latest pronouncement of this court on the subject, *In re Interrogatory of the Governor,* 162 Colo. 188, 425 P.2d 31, wherein we stated:

"* * * We have, of course, examined carefully our earlier decisions relating to the matter * * *. In our opinion, the result obtained in each of those cases is 'right' and not 'wrong.' But even if the results be a so-called 'wrong' decision, we would not be justified in overruling those cases unless there be compelling reasons for so doing. * * *"

Significantly applicable to the case at bar are the cases of *People v. McPhail,* 118 Colo. 478, 197 P.2d 315, and *Wolf v. People,* 117 Colo. 279, 187 P.2d 926.

In *Wolf v. People, supra,* this court stated:

"* * * We are not unconscious of the fact that that rule [stare decisis] is frequently ignored, with the general approval of the courts, for certain definite and often valid reasons. Among these are doubtful decisions handed down by closely divided courts and recent decisions establishing rules not yet firmly embedded in the jurisprudence of the jurisdiction. No such reason can possibly exist here. * * *"

In the *McPhail* case, *supra,* we find the following apt language:

"When a question arises here which has been before this court in a case clearly in point, has been ably argued by competent counsel, received our careful consideration, been unequivocally decided, and that decision has stood unchallenged over a long period of years, we have no disposition to reopen the subject while constitution and

statutes remain unaltered. Such is the situation now confronting us."

The criteria set out in those cases point up that the doctrine of stare decisis should be applied to *Sweet*. That case was obviously a contested one, with both sides arguing ably and persuasively. The arguments raised by Denver at this time are basically those presented to our court in the *Sweet* case. The *Sweet* opinion was a unanimous decision of the court, with one judge not participating. It has been the law for eleven years. There have been no constitutional changes relating to the question. There have been no intervening circumstances indicating a reversal except the need of Denver for increased revenue, which factor existed at the time of *Sweet* and which factor now is not sufficient to cause the abandonment of stare decisis.

■ More succinctly, the *Sweet* opinion has now become a basic part of Colorado jurisprudence. In these circumstances any changes deemed necessary should come from the legislature or from the people by their exercise of the power to initiate amendments to the constitution. This guiding principle we set forth in *Smith v. People,* 120 Colo. 39, 206 P.2d 826, as follows: "* * * The only answer to this question is that the law as declared and interpreted over many years is well established, and our function is to declare the law as we find it. If a change in long established judicial precedent is desirable, it is a legislative and not a judicial function to make any needed change. * * *"

■ Under the *Sweet* decision and under the amendment to article X, section 17, of the Colorado constitution, the legislature can apportion state income taxes among the several counties, cities or school districts without any constitutional prohibition. It has so done only· in the case of school districts.

We conclude, then, that continued adherence to the *Sweet* decision is governed by stare decisis and that this court should not overrule that decision.

SUPREME COURT NO. 23941
THE QUESTIONS ON ORDINANCE NO. 232

■ This ordinance is designated as a "Business Occupational Privilege Tax." It applies to all persons, as defined, "engaged in any business, trade, occupation, profession or calling of any kind having a fixed or transitory situs within Denver, for any period of time in a calendar month within Denver." It imposes a tax at the fixed rate of $2 per month, measured by the number of owners, partners, and also the employees performing services for such business who receive compensation therefrom in excess of $250 per month.

Two questions are posed for resolution:

1. What kind of a tax is provided by the ordinance?

2. Does Denver have the power and authority to pass and enforce such an ordinance?

It is contended by the plaintiffs that this tax is also an income tax and therefore Denver is prohibited from imposing such a levy by the Sweet case. We do not agree. The ordinance in all of its essential details is almost identical in one manner or another with similar ordinances which we have held valid in the following cases: *Post v. Grand Junction*, 118 Colo. 434, 195 P.2d 958; *Jackson v. Glenwood Springs*, 122 Colo. 323, 221 P.2d 1083; *Ping v. City of Cortez*, 139 Colo. 575, 342 P.2d 657; *Englewood v. Wright*, 147 Colo. 537, 364 P.2d 569.

In *Post v. Grand Junction, supra,* the ordinance imposed an occupation privilege tax upon all persons engaged in the sale of malt, vinous and spirituous liquors. In upholding the tax this court said:

"At the outset it is pertinent to observe that municipal authority, in the absence of constitutional restrictions, to impose occupational excise taxes purely for revenue for the support of its government, no longer is open to serious question. * * *"

The ordinance in *Jackson v. Glenwood Springs, supra,* imposed an occupational tax upon operators of a busi-

ness in Glenwood Springs at the following rates: "The sum of $20.00 for the first owner, partner, manager or employee; plus $6.00 for each additional owner, partner, manager or employee up to 9; plus $1.00 for each employee in excess of 9." This court overruled the several constitutional objections raised against the tax and held it to be a valid occupational tax.

In *Ping v. City of Cortez, supra,* this court upheld a $25 occupational tax imposed on every business in the City of Cortez.

Arguments much the same as are advanced here were presented in *Englewood v. Wright, supra,* and disposed of in that decision. In that case the power of Englewood to impose an occupational tax was conceded. Those who objected to it argued that the tax was an income or property tax improperly levied; that the classifications were arbitrary; that the ordinance permitting imposition of a jail sentence or fine for nonpayment was in violation of the constitutional guarantee against imprisonment for debt. All of these contentions were rejected by this court then, and we do so now. The terminology aside, it is clear that the Denver ordinance is similar to the Englewood tax. The *Englewood* case is strong precedent for the validity of the tax sought to be imposed by Denver's "Business Occupational Privilege Tax." Here again the doctrine of stare decisis, on which municipalities have extensively relied in the imposition of similar taxes, dictates that the four cited cases have settled the law and set at rest constitutional questions raised herein.

THE QUESTIONS ON ORDINANCE NO. 233

This ordinance is designated "Employee Occupational Privilege Tax." It declares "the performance of service within Denver by an employee for an employer as herein defined for any period of time in a calendar month for wages as herein defined is the exercise of a taxable privilege * * *." It imposes also a tax at the rate of $2 a month for each and every month for which

such employee is for any period of time so employed. Exempted from the tax are those whose compensation for such services is less than $250 per calendar month.

It is argued by the plaintiffs that this is a flat tax on income. We are not persuaded that this is true. The tax is limited to an employee engaged in an occupation, i.e., one who is performing such service for an employer, as defined, within Denver for any period of time in the calendar month upon a salary, wage, commission or other compensation basis. Other monetary earnings, no matter how substantial, from interest or investments or the like (all of which would be "income") are not taxed.

It is further contended that the four cases previously cited involving the occupation taxes levied in Grand Junction, Glenwood Springs, Cortez and Englewood are limited to persons engaged in business or self-employment and are not authority for taxing individuals working for others. We detect no valid limitation in the rule pronounced in those decisions just because the cities involved therein did not extend their taxes beyond the limits noted in their respective ordinances.

It is true that the precise issue concerning the authority to tax everyone gainfully employed was not before the court in any previous case, but such taxes are not novel or unheard of, and in other states the taxpayers have been as ardent in their protests and objections as the plaintiffs herein, only to find that similar ordinances to that under consideration here have been held valid. For example, in *Gaugler v. City of Allentown*, 410 Pa. 315, 189 A.2d 264, an annual tax of $10 upon each individual, resident and nonresident alike, engaged in any occupation within the corporate city limits of Allentown, Pennsylvania, was upheld. The Pennsylvania Supreme Court said:

"It is our conclusion that the tax imposed was purely an Occupation Privilege Tax despite the fact that it does not assess a varying levy according to the nature of the employment. It taxes the *privilege* of all to engage

in occupations within the municipality's territorial limits. This power was given by the legislature under the Act of 1947, supra. Sub-section A thereof, authorizes the imposition of taxes on 'persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions.' * * *"
Colorado has a similar statute delegating like authority to statutory cities. C.R.S. 1963, 139-75-1(3) and 139-78-3(2). Home rule cities are not limited to legislative grants of authority and at the very least have every power which the legislature may delegate to cities of lesser class. For other cases on occupation taxes on individual employees see *City of Louisville v. Sebree*, 308 Ky. 420, 214 S.W.2d 248; *Estes v. City of Gadsden*, 266 Ala. 166, 94 So.2d 744.

Persuaded as we are by the reasoning in courts of other jurisdictions, we nevertheless also hold that the four cases previously cited as upholding the validity of Ordinance No. 232 are also controlling as to Ordinance No. 233. The exemption for those who receive less than $250 a month income is a concrete way of exempting those who perform only minimal services within Denver. As so viewed, the classification is not arbitrary and is reasonable. The test quoted with approval from *McCarty v. Goldstein*, 151 Colo. 154, 376 P.2d 691, and *Champlin Refining Co. v. Cruse, Director of Revenue*, 115 Colo. 329, 173 P.2d 213, was most recently restated in *District 50 Metropolitan Recreational District v. Burnside*, 167 Colo. 425 448 P.2d 788, as follows:
"Equal protection in its guaranty of like treatment to all similarly situated permits classification which is reasonable and not arbitrary and which is based upon substantial differences having a reasonable relation to the objects or persons dealt with and to the public purpose sought to be achieved by the legislation involved."

## COLLATERAL ISSUE

It is argued that the portion of the ordinance which requires an employer to withhold the employee's

tax from the employee's wages places such a burden upon the employer as to be confiscatory and constituting the taking of property without due process of law. It is now universally recognized that there is no constitutional prohibition against such imposition upon employers who must withhold state and federal income taxes. This is also true of the requirement that the oil industry collect and pay the gasoline tax. This should be answer in itself to this argument. More specifically, however, we find the language in *Rinn v. Bedford,* 102 Colo. 475, 84 P.2d 827, a complete answer to this argument:

"We consider next the question whether the act may lawfully require the plaintiff as an attorney at law to collect the tax from those for whom he himself performs services. The argument that he is thereby constituted a collector of taxes against his will, and that the compensation provided for the collection is inadequate and confiscatory, must fall, for there is no distinction in principle between such collection and the collection, for instance, of a gasoline tax, which is collected by the seller from the purchaser as part of the purchase price and thereupon turned over to the government. * * * "

The judgment of the trial court holding invalid Ordinance No. 234 and the injunction issued restraining and prohibiting the city from imposing or enforcing the tax provided thereby is affirmed.

The findings of the court holding Ordinances No. 232 and No. 233 valid and the judgment dismissing the complaint as to those two ordinances are affirmed.

MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE PRINGLE and MR. JUSTICE GROVES specially concurring.

MR. JUSTICE HODGES, MR. JUSTICE KELLEY and MR. JUSTICE LEE concurring in part and dissenting in part.

MR. CHIEF JUSTICE MCWILLIAMS specially concurring:

I concur in the majority opinion as authored by Mr.

Justice Day. However, I would like to add a few observations of my own.

Nobody apparently likes to pay taxes, be it with or without representation. However, it should be remembered that courts do not enact tax laws nor are they concerned with the wisdom of any tax law. Hence, as concerns the instant controversy, the *wisdom* of any of the three taxing ordinances here under attack is not a matter to be passed upon by us. That particular matter has been resolved, at least for the time being, by the People of the City and County of Denver, acting through their elected representatives. The *only* issue in the present controversy to be resolved by us concerns the *power* of the Denver City Council to enact the three taxing ordinances with which we are here concerned.

This court has now *unanimously* upheld the power of Denver to enact the so-called occupational tax as it relates to employers. In my opinion no other result could be reached on this phase of the case unless we overrule not one, but four, prior decisions of this Court which have upheld similar taxing ordinances in Englewood, Glenwood Springs, Grand Junction and Cortez.

Notwithstanding the fact that this Court has now unanimously upheld the so-called occupational tax as it relates to employers, the Court has by only a 4-3 vote upheld the so-called occupational tax as it would apply to employees. I for one cannot see how the occupational tax is, on the one hand, *valid* when applied to employers, but somehow *invalid* when sought to be applied to employees. In other words, it is difficult for me to see how the occupational tax is truly an *occupational* tax when applied to employers, but somehow becomes an *income* tax when sought to be applied to employees. The differences in these two taxing ordinances are simply not such as would justify upholding one, and striking down the other. In my view the employers and the employees in this connection are in the same boat — the occupational tax is either *valid* as to both, or *invalid* as to both.

As concerns the so-called earnings tax, this Court on the basis of *Denver v. Sweet, supra,* has now *unanimously* declared it to be invalid. I agree, though with some reluctance. To explain, in my opinion the *result* reached in *Denver v. Sweet, supra,* is wrong and the *reasoning* contained therein is to me, at least, unconvincing. As I see it, the rule of *Denver v. Sweet, supra,* represents an unwarranted impingement upon the broad powers constitutionally vested in the Home Rule cities. Though in my view I am not *bound* to follow the rule announced in *Denver v. Sweet, supra,* for the reasons set forth by Mr. Justice Day I feel however that I *should* and I now *do*. It is on this basis that I concur in the determination that the earnings tax should be declared invalid.

Mr. Justice Pringle has authorized me to state that he concurs in the majority opinion authored by Mr. Justice Day and also concurs in this specially concurring opinion.

Mr. Justice Groves specially concurring:

I concur in the majority opinion believing that thereby I do not indicate that I would have concurred in the opinion in *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441.

Mr. Justice Hodges concurring in part and dissenting in part:

I concur with the majority opinion in affirming the judgment of the trial court as to the invalidity of Ordinance No. 234 imposing the so-called "earnings tax for general revenue purposes." I likewise concur with the majority in affirming the judgment of the trial court upholding Ordinance No. 232 which imposes the business and occupational privilege tax.

However, I respectfully dissent from the majority opinion insofar as it upholds the validity of Ordinance No. 233 which imposes a so-called "Employee Occupational Privilege Tax" of $2.00 per month. Regardless of

the name affixed to this tax, it is in my view an income tax. Therefore, it is not within the power and authority of the City and County of Denver to enact. *Denver v. Sweet*, 138 Colo. 41, 329 P.2d 441.

The majority opinion cites *Englewood v. Wright*, 147 Colo. 537, 364 P.2d 569, *Ping v. City of Cortez*, 139 Colo. 575, 342 P.2d 657, *Jackson v. Glenwood Springs*, 122 Colo. 323, 221 P.2d 1083 and *Post v. Grand Junction*, 118 Colo. 434, as the previous pronouncements of this court which purportedly uphold the validity of Ordinance No. 233. An analysis of these cases, however, reveals that each one involved the imposition of an occupation tax on a business, or, in other words, the privilege of conducting a certain business or occupation. In each case, the tax was upheld as a lawful occupation tax on the privilege of conducting certain named businesses or occupations within a municipality. As pointed out in *Englewood, Ping, Jackson,* and *Post*, the controlling element of an occupational privilege tax is the presence in the municipality of a business or occupational endeavor, project or enterprise. It is this thing itself that is subject to an occupational privilege tax. But, the imposition of a tax on an employee of the business because he earns more than $250 per month for services rendered to an employer within the municipality, is to impose a tax not on a thing, or a privilege, but on the personal right of an individual to earn an income by the performance of services for his employer.

The three cases from other jurisdictions referred to by the majority as supporting this type of tax are distinguishable from the precise issue involved here. The fact that an employee is earning a salary, commission or wages, is the controlling element in the imposition of an income tax as distinguished from the controlling element of an occupational privilege tax. An income tax is not levied upon the privilege of doing business or conducting an occupation within boundaries of a political subdivision, but upon the right of an individual to receive an

income for services rendered by him. *Paine v. City of Oshkosh,* 190 Wisc. 69, 208 N.W. 790.

Section 1.2-1 of Ordinance No. 233 makes "the performance of services within Denver by an employee for an employer as herein defined, for any period of time in a calendar month for wages as herein defined," the exercise of a taxable privilege, which is taxed under Section 1.3-1 at the rate of $2.00 "per month for each and every month in which such employee is, for any period of time, so employed."

The obvious intention and purpose of the wording contained in the above ordinance provisions is to denominate the right to be employed and earn an income in excess of $250 in the City and County of Denver as a privilege, which is, therefore, taxable as such by the City and County of Denver. But such wording is not the determining factor which changes the inherent characteristic of an income tax. It is the operational feature of the tax itself which controls. If its imposition is conditioned upon the receipt of income or wages, and it is structured so that it is to be a direct charge on income of $250 or more per month, it is an income tax, and as such, only the Legislature in Colorado may impose it according to *Sweet, supra.*

For this reason, the validity of Ordinance No. 233 should not be upheld.

MR. JUSTICE KELLEY and MR. JUSTICE LEE join in the views expressed herein.

MR. JUSTICE KELLEY concurring in part and dissenting in part:

I agree with the majority in striking down Ordinance No. 234 for the reasons stated in the majority opinion. I have joined in Mr. Justice Hodges' dissenting opinion as to the invalidity of Ordinance No. 233. I would hold Ordinance No. 233 invalid for the additional reasons set forth in this dissent.

Mr. Justice Hodges would hold Ordinance No. 233 invalid because, irrespective of its label, it is an income tax and invalid by virtue of *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441. However, if it is an occupation tax its validity must be premised on the proposition that it is *local and municipal* in concept rather than of state-wide concern.

Denver attempts to justify the imposition of its tax on everyone employed in Denver who earns $250 per month, regardless of where he may reside and knowing that many are nonresidents, on the basis that it is the "Core City."

There is no formal organization of the *Core City,* it has no fixed boundaries, nor is there any statutory or constitutional recognition of the concept. The very use of the term "core" suggests that it is only *a part of a larger whole.* The *larger whole* is what is known as "the metropolitan area," the problems of which have been the subject of many legislative and constitutional proposals in the general assembly.

The metropolitan area, at least for census purposes, in addition to Denver, consists of Arapahoe, Adams, Jefferson and Boulder Counties. It is common knowledge that residents of Douglas, Clear Creek, Park, Gilpin and Weld Counties commute to full-time jobs in Denver. Certain types of employment permit people to live at even greater distances and still work there to a "sufficient" extent to earn $250.00 per month.

The *metropolitan area* is inhabited by approximately fifty percent of the state's population and Denver, in turn, has almost fifty percent of the area's total.

In view of the magnitude of the area and the population, it is most difficult to escape the conclusion that the imposition of the tax is not of purely *local* concern, but is of *state-wide* concern.

When the legislature authorized cities to impose *occupation* taxes it must be assumed that it was thinking of *occupation tax* in the traditional sense — a tax on the

owners of businesses for the privilege of conducting various classes of business within the boundaries of the city. We find classic examples of this type of tax in the four cases cited in the majority opinion. *Post v. Grand Junction,* 118 Colo. 434, 195 P.2d 958; *Jackson v. Glenwood Springs,* 122 Colo. 323, 221 P.2d 1083; *Ping v. City of Cortez,* 139 Colo. 575, 342 P.2d 657; *Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569. But it should be noted that in none of those cases were *employees* as such taxed and in none of them were the businesses subject to the tax situated *outside* of the city. To me this suggests that when a city attempts to encompass the whole or even a substantial part of the state within its taxing program, it is of *state-wide concern.* In this connection it is interesting to note that Denver does not attempt to impose its sales tax on sales of merchandise made *within* Denver for delivery *outside* of Denver.

Home rule cities, other than Denver, within the Denver Metropolitan area are Englewood, Littleton, Aurora, Boulder, Arvada, Golden. In addition, there are some twenty home rule cities which appeared here through the Colorado Municipal League in support of Denver's position. I daresay all of these cities have financial problems almost as acute as those which prompted Denver to enact the ordinances approved by this court. Each of those cities now has the same *power* as Denver to enact the so-called occupational privilege tax.

If, or perhaps more likely — when, each of the home rule cities in the Denver metropolitan area enacts an identical ordinance those same taxpayers who will now be paying $2.00 per month to Denver will then be paying a like sum to six additional communities. Undoubtedly, financial problems are not limited to the cities in the Denver area. It is conceivable that several other cities will follow suit. It is also conceivable that a single taxpayer, such as a salesman, could be subjected to the taxes of several cities.

To those who suggest that the situation depicted does

not appear in the record before us, I say that we should not consider the constitutionality of legislation in a vacuum. Also, the assumed facts are set out solely to demonstrate the nonlocal effect of the application of the law. If the operation of an automobile upon a city's streets by one under the influence of liquor is of state-wide concern, *Morris v. City of Canon City*, 137 Colo. 169, 323 P.2d 614, the imposition of a tax on a nonresident of the city who enters in the course of his employment is likewise of state-wide concern.

Although the arguments advanced are almost as equally applicable to the tax on the employers, I have elected not to expand this dissent to include Ordinance No. 232 at this time because of other factors which might possibly lead me to a different conclusion. My concurrence in the majority opinion does not mean that I do not entertain serious doubts as to its validity too.

There is respectable authority for the proposition that a "head" tax, such as we have here, is invalid when the attempt is to impose it on nonresidents. A statement which appeals to my sense of reason is found in *Danyluk v. Bethlehem Steel Company and the City of Johnstown*, 406 Pa. 427, 178 A.2d 609. It reads:

"The tax bears none of the incidents of an occupation tax which is a flat rate levy measured by the assessed value of a man's occupation. Consequently, in a true occupation tax the amount of the levy varies with the assessed value of a particular mode of employment. Here, no distinctions among occupations are made, a fixed ten dollar levy falling upon all nonresidents. The use of the word 'occupational' adds nothing to the levy and does not conceal its real nature as a capitation tax.

" 'Capitation or poll taxes are taxes of a fixed amount upon all persons, or upon all the persons of a certain class, within the jurisdiction of the taxing power, without regard to the amount of their property or the occupations or business in which they may be engaged.' 51 A.L.R. § 38, p. 66, 1 COOLEY, TAXATION § 40, p. 122

(4th ed. 1924). The tax is imposed because of the protection which a governmental unit affords to persons residing therein, and is designed primarily to require contribution from all residents for the services rendered them by the taxing authority. Consequently, per capita, capitation or head taxes can be imposed only upon residents of the particular political subdivision since residence alone furnishes the contact necessary to render a person amenable to the direct levy."

This case is still the law in Pennsylvania. *Gaugler v. City of Allentown*, 410 Pa. 315, 189 A.2d 264, cited by the majority distinguishes the *Johnstown* ordinance and the *Allentown* ordinance. It is significant, in my judgment, that in the *Gaugler* opinion, immediately following the quotation appearing in the majority opinion, this statement appears:

"\* \* \* In Subsection E of the act, the legislature specifically treated a head or poll tax separately and distinctly from an Occupation Privilege Tax and clearly expressed an intention that such distinct and separate taxes could be imposed. It is fundamental that every law is to be construed, if possible, to give effect to each and every provision, Act of May 28, 1937, P.L. 1019, § 51, 46 P.S. § 551, and Commonwealth v. McHugh, 406 Pa. 566, 178 A.2d 556 (1962). Moreover, the legislative intent is further clarified by the imposition of *separate* limitations on the amount of the levy that can be imposed in the various enumerated categories."

The majority opinion states that "Colorado has a similar statute delegating like authority to statutory cities. C.R.S. 1963, 139-75-1(3) and 139-78-3(2)." These statutory provisions are identical, one referring to cities of the first class and the other to cities of the second class. The power is granted in this language:

"(3) Regulation of occupations and businesses. — To license, regulate and tax, subject to any law of the state now in force or hereafter to be enacted, any or all lawful

112

occupations, business places, amusements or places of amusements."

To me the differences between the Colorado statute and the Pennsylvania statute are sufficient to lead me to the conclusion that the reasoning and holding of *Danyluk* applies here rather than that of *Gaugler*.

For the foregoing reasons I would hold Ordinance No. 233 invalid.