No. 24769.

Jerry L. Hamilton, Forest D. Harmon, Kenneth Adams, Verne K. Batchelder, Dominic Reinpold, J. Darrell Rogers, Frank L. Gill, and Sam T. Taylor *v.* The City City and County of Denver and Charles L. Temple, as Manager of Revenue of the City and County of Denver.
(490 P.2d 1289)

Decided September 20, 1971.    Rehearing denied October 4, 1971.

WORMWOOD, WOLVINGTON, RENNER & DOSH, LAIRD CAMPBELL, JAMES R. GILSDORF, for plaintiffs-appellees.

MAX P. ZALL, City Attorney, W. KEITH PETERSON, Assistant, for defendants-appellants.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This is an appeal by defendant-appellant City and County of Denver, hereinafter referred to as the City, from an adverse judgment of the trial court, declaring article 116 (c) of the Denver Municipal Code (the Employee's Occupational Privilege Tax) to be invalid when applied to plaintiff-appellees and other members of those classes represented by them.

Plaintiffs Gill and Taylor represented in this class action the members of the General Assembly of the State of Colorado. The other plaintiff-appellees represent as a class employees of the state in the classified service, more commonly known as civil service employees. The matter was submitted to the trial court on the single question of whether the taxing ordinance could validly be enforced against the named plaintiffs and against others of the same classes. Following the submission of briefs and oral arguments, the trial court granted the plaintiffs' motion for summary judgment, concluding that as a matter of law:

"1. The Denver ordinance does not include the state of Colorado, and the city could not constitutionally tax the state of Colorado, as an employer.

2. The relationship between the plaintiffs and the state, whether characterized as a privilege or right, is a matter of statewide concern and neither local nor municipal as those terms are defined in Article XX of the Constitution of Colorado.

3. The imposition of the tax upon the plaintiffs and those similarly situated, as a condition precedent to employment by the state, is not within Denver's jurisdiction as a matter of local or municipal concern and Denver has no right to impose such a tax upon any employment relation where, as here, the state of Colorado is the employer.

4. The plaintiffs have complied with the constitutional and statutory requirements applicable to membership in

the General Assembly and in the classified service, and the city has no authority to impose any additional qualification or requirement and it is immaterial that the additional requirement of paying a tax be a revenue measure.

5. The performance of services by members of the General Assembly is not within Denver in a jurisdictional sense."

We note first that the issue of the constitutionality of the ordinance has already been resolved by this court in *City and County of Denver v. Duffy Storage and Moving Co.*, 168 Colo. 91, 450 P.2d 339 (1969), *appeal dismissed*, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1 (1969). Although concluding, in *Duffy*, that the so-called "Head Tax" was not violative of the Colorado constitution, we expressly made no determination as to the validity of the tax as applied to specific individuals or classes:

"We state at the onset that what is not involved or intended to be covered in this decision are the rights, exemptions and immunities that the individual employers and employees as they may believe their respective positions to be under the definitions in and the terms of the ordinances. * * * " *Duffy, supra.*

The representatives of several classes of state employees, assert that while the ordinance in question may not be unconstitutional on its face, it becomes invalid when applied specifically to them as employees or elected officials of the State of Colorado. Those sections of the ordinance applicable either generally or specifically to our discussion and decision herein are as follows:

Article 166C. 2-1:

"The council of the City and County of Denver determines and declares that the performance of services within Denver by an employee for employer as herein defined, for any period of time in a calendar month for wages as herein defined, is the exercise of a taxable privilege, whether or not all or only a part of such services of a natural person are performed within Denver."

".4-5 In the event an employer is exempt withholding provisions herein, the employee of such exempt employer shall make and file with the manager a monthly return for the preceding calendar month in such manner and upon such forms as the manager may prescribe, commencing on the first day of February, 1969, the first of each month thereafter, and at the same time such employee shall pay to the manager the tax herein imposed for the said preceding calendar month."

".28 Violations: Evasion of Collection of Tax.

.28-1 It shall be a violation of this article for any taxpayer to refuse to make any return provided to be made in this article, or to make any false fraudulent return or any false statement in any return or to fail or refuse to make payment to the manager of any taxes collected or due the city, or in any manner to evade the question of payment of the tax or any part thereof imposed by this article, or for any reason to fail or refuse to pay such tax or evade the payment thereof, or to aid or abet another in any attempt to evade the payment of the tax imposed by this article. Any corporation making a false return or a return containing a false statement shall be guilty of a violation of this article.

.28-2 Penalty. Any person who shall violate any of the provisions of this article shall be guilty of a violation thereof.

.28-3 Each and every 24 hours continuous of any violation shall constitute a distinct and separate offense."

Taking up the discussion of the legal arguments made by the parties, we incorporate therein, where appropriate, the conclusions of law made by the trial court and quoted, *supra*.

I.

The City asserts that the action should have been dismissed by the court below, because the plaintiffs and the members of the classes represented by them had failed to exhaust the administrative remedies provided in the ordinance. In denying Denver's motion to dismiss on this

ground, the trial court recognized that a great many employees of the state are either employed in Denver or carry on a substantial portion of their duties within the city limits, and further that the General Assembly consisted of a fairly substantial number of persons. Therefore, the court concluded, a dismissal would necessarily have resulted in a multiplicity of actions, both civil and criminal, based upon precisely the same legal issues as those presented today, and therefore not furthering the efficient administration of justice.

Colorado follows the general rule that the equitable jurisdiction of a court may be invoked to meet the ends of justice in order that a multiplicity of suits may be prevented. *Baker v. Atchison, Topeka and Santa Fe Ry. Co.*, 106 F.2d 525 (10th Cir. 1939). A declaratory judgment is a proper proceeding when the amounts involved are substantial and there is a threat of multiplicity of suits, particularly when the plaintiffs are public employees. *See McNichols v. Police Protective Ass'n*, 121 Colo. 45, 215 P.2d 303 (1949). Furthermore, as pointed out by the court in its order denying the motion to dismiss, the issues involved in this case are purely questions of law, and no good purpose would be served in requiring the filing of individual claims before the manager of revenue, whose presumed expertise would not be helpful in resolving legal as distinguished from factual issues. In concluding that a dismissal would not be appropriate herein, we find ourselves in agreement with those cases cited in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). In *McKart*, the government contended that the petitioner was precluded from raising the invalidity of his draft classification because of his failure to exhaust administrative remedies through the selective service system. In rejecting this contention the court said:

"The question of whether petitioner is entitled to exemption as a surviving son is, as we have seen, solely one of statutory interpretation. The resolution of that issue does

not require any particular expertise on the part of the appeal board; the proper interpretation is certainly not a matter of discretion. In this sense the issue is different from many Selective Service classification questions which do involve expertise or the exercise of discretion, both by the local boards and the appeal boards. Petitioner's failure to take his claim through all available administrative appeals only deprived the Selective Service System of the opportunity of having its appellate boards resolve a question of statutory interpretation. Since judicial review would not be significantly aided by an additional administrative decision of this sort, we cannot see any compelling reason why petitioner's failure to appeal should bar his only defense to a criminal prosecution." *McKart v. United States, supra,* 395 U.S. at 197-199.

We conclude that no good purpose would be accomplished by requiring the plaintiffs and those similarly situated to exhaust their administrative remedies before bringing declaratory judgment suit. Other procedural defects alleged by the defendant City and County of Denver are likewise such that we will not consider them in order that we may reach the substantive issues.

II.

We turn next to the central issue presented herein. Plaintiffs acknowledge that the Denver tax is valid when applied to the populace as a whole, *Duffy, supra.* In urging, however, that the decision of the trial court be upheld, plaintiffs argue that the imposition of the tax upon them unlawfully interferes with the operation of the state government by adding new and additional qualifications upon the relationship between the state and its employees, a status of statewide and not local concern. Although we find ourselves in agreement with the contention that the conditions of state employment, or election to state office, are to be limited to those either prescribed in the constitution, enumerated in applicable statutes, or implemented, where applicable, by

the state civil service commission, it has not been demonstrated nor can we rationalize logically in what way the imposition of the tax upon state employees interferes with or adds additional qualifications for state employment. Payment of the tax is not a prerequisite to being appointed or elected, nor does continuation to the state position depend on payment of the tax. Whether the individual employee is in default has not been shown by the record either to be known to or any concern of the state.

This court has previously commented on what constitutes those areas over which a municipality may legitimately exercise control:

"Whether a particular business activity is a matter of municipal concern to a city under Article XX depends upon the inherent nature of activity and the impact or effect which it may have or may not have upon areas outside of the municipality. *People v. Mountain States Tel. & Tel. Co.,* [125 Colo. 167, 243 P.2d 397 (1952)].

It has long been acknowledged that a municipal ordinance of a home rule city which is in clear opposition to the provisions of a general state law is invalid. *Ray v. Denver,* [109 Colo. 74, 121 P.2d 886 (1942)]." *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958).

We have also consistently upheld the right of home rule municipalities to enact taxes applicable to local matters. *See Denver v. Duffy, supra; Post v. City of Grand Junction,* 118 Colo. 434, 195 P.2d 958 (1948); *Jackson v. City of Glenwood Springs,* 122 Colo. 323, 221 P.2d 1083 (1950); *Ping v. City of Cortez,* 139 Colo. 575, 342 P.2d 657 (1959); *City of Englewood v. Wright,* 147 Colo. 537, 364 P.2d 569 (1961).

A situation analagous to the one here before us was presented in *Post v. Grand Junction, supra.* In *Post,* the city imposed an occupational tax upon all persons engaged in the sale of liquors. In upholding the right of the city to enact such taxing legislation for its own benefit, we commented as follows:

"By article XXII of the Constitution, the people of the state authorized the legislature to designate the agencies which shall perform the acts necessary for the manufacture, sale and distribution of liquor, and to exclusively make regulations concerning the same. No attempt is made by said ordinance to in any way usurp the power of the legislature to regulate such sale of liquor. All other governmental powers, including the power to tax, is deliberately omitted from the constitutional provision, and the city was not deprived of its authority to levy occupational taxes by said constitutional provision. It is to be noted that even the exclusive power of the legislature to regulate is limited to the specific acts of manufacture, sale and distribution of intoxicating liquors and does not affect any other regulation."

Applying this reasoning to the instant case, we note that, for example, employment in the classified civil service of the state is based upon Colo. Const. art. XII, §13, which provides in pertinent part:

"Appointments and employments in and promotions to offices and places of trust in employment in the classified civil service of the State shall be made according to merit and fitness, to be ascertained by competitive test of competence, the person ascertained to be the most fit and of the highest excellence to be first appointed." *Id. See State Civil Service Comm'n v. Hazlett,* 119 Colo. 173, 201 P.2d 616 (1948).

Plaintiffs Gill and Taylor are state senators whose qualifications are set forth in the constitution as follows: "Section 4. Qualifications of Members — No person shall be a representative or senator who shall not have obtained the age of twenty-five years, who shall not be a citizen of the United States, who shall not for at least twelve months next preceding his election have resided in the territory included in the limits of the county or district in which he shall be chosen; provided, that any person who at the time of the adoption of laws, shall be

eligible to the first general assembly." Colo. Const. art. V, §4.

█ We perceive nothing in the above, or other applicable statutes and constitutional provisions to preclude a city such as Denver from applying appropriate taxes such as the one herein to those employees of the state physically employed within the confines of the city.

█ It has long been well established that reasonable, non-discriminatory taxes may be imposed by one governmental unit upon the employees of another, where not precluded by applicable law. For example, in determining whether the City of Columbus could levy an income tax on compensation earned by a nonresident for services paid by a state institution and performed on state property located within city boundaries, the Ohio Supreme Court, through Judge Taft, spoke as follows:

"At one time, it was considered that any tax by one government on income received from another government would represent such an undue interference with the governmental activities of the latter government as to constitute a tax upon that latter government or its activities.

However, since the decision in *Graves v. People of State of New York ex rel. O'Keefe*, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, it no longer can seriously be argued that a nondiscriminatory tax on income earned for services rendered to or work done for a government represents a legally recognized interference with the activities of that government so as to constitute a tax upon that government. In that case, which was decided before enactment of any federal statute providing for taxation by a state or its subdivisions of income received from the federal government, several prior decisions were overruled and it was held that the income was subject to taxation." *McConnell v. City of Columbus*, 172 Ohio St. 95, 173 N.E. 2d 760 (1961).

After the decision in *Graves v. New York ex rel. O'Keefe, supra,* a great many different situations have

reached the same result. *See e.g. Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926), (upholding federal tax on income from contract with state); *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318 (1937) (upholding state tax on income from contract with federal government); *Helvering v. Mountain Producers Corp.,* 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907 (1938) (upholding federal tax on income from lands leased from state); *Helvering v. Gerhardt,* 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938) (upholding federal tax on salary of state employee); *Marson v. Philadelphia,* 342 Pa. 369, 21 A.2d 228 (1941) (upholding city income tax on state officers and employees); Fordham and Mallison, *Local Income Taxation* (1950), 11 Ohio State Law Journal, 217, 254.

In *McConnell v. City of Columbus, supra,* the court addressed itself to the argument that inasmuch as state employees are employed on state property, the city is providing no services nor conferring any benefits upon such employees, and therefore the tax could not be levied against them, by stating:

"In our opinion therefore, since Columbus affords plaintiff and his class not only a place to work within its boundaries, but also a place to work protected by the Columbus municipal government, there is an ample fiscal relationship between the Columbus income tax and the protections, opportunities and benefits made available by Columbus with respect to that area (assuming such fiscal relationship is necessary) to justify Columbus in imposing that tax on such income."

In 1943, the Supreme Court of Pennsylvania met logically a question similar to the one presented herein when it considered whether a Philadelphia income tax could validly be applied to a New Jersey resident employed by the Federal Government at the Philadelphia Navy Yard on League Island, a tract of land in Philadelphia. That court commented appropriately:

"Plaintiff [the non-resident taxpayer] may at all times use the streets, bridges and other facilities of the City, and also has the benefit of protection of its police and fire departments when engaging in business or pleasure in that municipality, as well as many other advantages. * * * Therefore, we are convinced that the tax does not violate the Fourteenth Amendment of the Federal Constitution, that all the benefits of the facilities of Philadelphia are legally available to plaintiff, and he has no just reason to complain of the tax." *Kiker v. City of Philadelphia,* 346 Pa. 624, 31 A.2d 289, 295 (1943).

■ In the instant case, we conclude that the application of the Denver "head tax" to members of the enumerated classes in no way interferes with, or imposes a condition precedent to, employment by the state. The employee is taxed because he is physically present within the taxing jurisdiction of Denver, which furnishes such employee the same facilities and services which are available to its permanent residents, and for which such employees are required to pay a reasonable share. We find ourselves in agreement with the New Jersey Supreme Court which commented as follows when an interstate carrier asserted the illegality of the state tax burden as an interference with interstate commerce:

"We believe validity will now be judged broadly speaking, and in the absence of congressional action, on whether it is a fairly apportioned, non-discriminatory means of requiring such a corporation to pay its just share of the cost of state government upon which it necessarily relied, and by which it is furnished protection and benefit." *Roadway Express Inc. v. Director, Division of Tax,* 50 N.J. 471, 236 A.2d 577 (1967).

The judgment of the lower court is reversed and the cause remanded with directions to enter judgment consonant with the views expressed herein.

MR. JUSTICE LEE and MR. JUSTICE KELLEY dissenting.