HUMBLE OIL AND REFINING COM-
PANY, Petitioner,

v.

Robert S. CALVERT et al., Respondents.

No. B–2685.

Supreme Court of Texas.

March 29, 1972.

Rehearing Denied May 10, 1972.

The two main problems are (1) whether by executing an oil and gas lease, the United States abandoned its exclusive jurisdiction over the mineral estate in the enclave, and (2) whether, assuming that it had not abandoned its jurisdiction, the United States consented to the State's taxation by enacting what is known as the Buck Act.

The trial court, sitting without a jury, held that the United States had abandoned its jurisdiction of the mineral estate, and thus receded to the State jurisdiction and the power to tax. Hence it held that Humble could not recover any of the taxes paid. The Court of Civil Appeals disagreed, as we do, that there had been an abandonment by the United States. But it further held that the Congress, by the Buck Act, had consented to the State taxation. The Court of Civil Appeals affirmed that part of the trial court's judgment denying Humble a recovery for its "occupation" taxes; and it reformed the trial court's judgment to allow a recovery of the Regulation Pipeline Tax. 464 S.W.2d 170. The State does not contend that the Regulation Pipeline Tax is a Buck Act income tax, and we do not regard that tax as being before us. We therefore affirm the judgment of the Court of Civil Appeals.

After giving the background of the case, we will first give our reasons for holding that there was no abandonment or recession of the mineral estate by the United States, and then discuss the Buck Act.[1] That Act permits the States to levy certain taxes, including "income taxes"; but then it defines "income taxes" as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." While our statute is generally called an "occupation tax," it is our opinion that the tax essentially falls within the definition of "income tax" in the Buck Act.

McGinnis, Lochridge & Kilgore, Lloyd Lochridge, Austin, Neville Fitch, Walter B. Morgan, Dillard Baker and Lee Hill, Houston, for petitioner.

Crawford C. Martin, Atty. Gen., Wardlow Lane and Jim Broadhurst, Asst. Attys. Gen., Austin, for respondents.

GREENHILL, Justice.

Humble Oil & Refining Company instituted this action to recover "occupation taxes" and the Regulation Pipeline Tax paid to the State under protest. The taxes arose out of Humble's operations in the federally owned Corpus Christi Naval Air Station enclave.

## The Background.

In 1940, the United States condemned approximately 2000 acres for use as a Naval

1. 4 U.S.C.A. §§ 105–110, 54 Stat. 1059 (1940).

Air Station and was awarded fee simple ownership. Later in the same year, pursuant to Article 1, Sec. 8, Clause 17 of the United States Constitution, the Governor of Texas [O'Daniel] ceded exclusive jurisdiction over the condemned land to the United States government. The State retained only the power to serve process in the enclave.

In 1962, in order to prevent drainage by peripheral drilling, Humble was awarded a "Protective Oil and Gas Lease." A ⅙ royalty was retained by the federal government. Humble was successful in its drilling, and it now seeks to recover the oil and gas occupation taxes and the Regulation Pipeline Tax paid under protest to the State.

1. The Question of Recession to the State

The Texas act of cession granted exclusive jurisdiction to the United States "as long as the same [land] remains the property of the United States. . . ." It also provided that the lands should be exempt from State taxation "so long as the same are held, owned, used and occupied . . . for any of the purposes expressed in the foregoing statutes and not otherwise."

The argument is that in Texas, an oil and gas lease is not really a "lease" but is the conveyance of a determinable fee in the minerals; that by granting the fee to the minerals to Humble, the United States effected a severance of the mineral estate just as if it had executed a deed in fee simple to the west one-half of the surface; and that, therefore, the mineral estate was no longer owned by the United States, and it certainly was not used for the purpose of operating a naval air station. So, the argument is, the United States no longer owns this part of the enclave, has abandoned its exclusive jurisdiction over it and thus receded the power to tax the minerals to the State.

There are ample Texas cases to support the State's contention that under Texas law, an oil and gas lease does convey a determinable fee simple estate. The opinion of the Court of Civil Appeals discusses several cases which would distinguish this case from the usual Texas rules on the effect of the execution of an oil and gas lease in Texas.

■ We think that the simplest reason for disagreeing with the State in this case is that when the State ceded lands to the United States, it is federal law which is determinative of the effect of the execution by the United States of an oil and gas "lease."

■ This principle was recognized in *S.R.A. Inc. v. Minnesota*, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946). There lands were ceded for use as a U. S. post office. The building was later vacated. The land and the building were "sold" by the United States to S.R.A., but the United States retained legal title, as a mortgage or security interest, to insure payment in full. The State of Minnesota then sought to tax the land on the idea that the United States had abandoned its jurisdiction. The question before the court was whether federal or Minnesota law would determine the effect of this type conveyance. It was held by the Supreme Court of the United States that, "In determining the meaning and effect of contracts to which the United States is a party, the governing rules of law must be finally declared by this Court." The holding was that since under federal law the executory contract of sale left only a security interest in the federal government, this sale passed enough interest to the grantee to trigger an abandonment of federal jurisdiction. Thus in our case, federal law will declare the effect to be given an oil and gas lease. The execution of an oil and gas lease by the federal government does not constitute a relinquishment of federal jurisdiction. In this regard, see *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964), where Mr. Justice Black, writing for a unanimous court, concluded with the warning that "[w]hen Congress has wished to allow a State to exercise jurisdiction to levy certain taxes within a federal en-

clave it has specifically so stated, as in the Buck Act. . . ." 376 U.S. at 374, 84 S.Ct. at 860, 861.

We therefore disagree with the State on its first ground.

## 2. The Buck Act

The second contention of the State is that by operation of the Buck Act, the taxes are sanctioned. The Buck Act was enacted by the Congress in 1940 to enable the states to impose certain taxes including "income taxes" within federal enclaves. "Income tax" is defined very broadly to mean *"any* tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." (emphasis added).

The Congressional intent is strongly stated in the bill's Senate Report[2] where it is stated that " [t]his definition [of income tax] . . . must of necessity cover a broad field because of the great variations to be found between the different State laws. The intent of your committee in laying down such a broad definition was to include therein any State tax (whether known as a corporate-franchise tax, or business-privilege tax, or any other name) if it is levied on, with respect to, or measured by net income, gross income, or gross receipts."

We are here dealing with a particular statutory definition of an "income tax" in a particular context, and not with any sort of common understanding of an "income tax." "Income taxes," or taxes on income, describe a generic class of taxes in which the base or measure is income. "Income" is variously described as the flow of goods, services, property or other wealth during a definite period of time. It may be considered as the money, or money's worth, which comes during a definite period. It is to be distinguished from capital, which is a

fund of wealth at a particular time. See Seligman, Income Tax, 7 Encyclopedia of the Social Sciences 628–631 (1932). The essence of income is an inflow constituting an accretion to wealth, identifiable and measurable in money or money's worth, though not necessarily in cash.

A particular "income tax" may, of course, define its base more narrowly and selectively than the broadest definition of income. A particular income tax may select different points in time at which the income will be recognized, such as the time of sale, time of receipt, time of manufacture or production, et cetera. Whatever these differences, however, the tax does not cease to be an income tax.

The greatest body of authority with respect to income taxes is to be found in the statutes, regulations, cases and other authorities relating to the United States federal income tax, Internal Revenue Code of 1954, Title 26, United States Code. For purposes of the federal income tax, the Supreme Court of the United States has rejected the effort to develop a single comprehensive definition of income, stating that "no single, conclusive criterion has yet been found to determine in all situations what is sufficient gain to support the imposition of an income tax." Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 407, 66 S.Ct. 546, 549, 90 L.Ed. 752 (1946). Nevertheless, that court has amply demonstrated what is to be regarded as income under the federal income tax and, therefore, what may be regarded as properly includable within an income tax. Gross income under the federal income tax extends to "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). A tax, then, levied upon and

---

2. Report of the Senate Finance Committee of May 16, 1940, at page 5; 76th Congress, 3rd Session; Report No. 1625, Calendar No. 1692, which was introduced in evidence in this case. The report

also states that "The definition of income tax is broad enough to include a sales tax which is measured by gross receipts from sales." *Id.* at page 3.

measured by an accession to wealth and over which the taxpayer has dominion may properly be regarded as an income tax.

It is clear that income, to be subjected to the tax under the federal income tax, need not be received in the form of cash or even readily exchangeable value. Rather, income comprehends an accession to wealth in the form of economic benefit, value in money, or money's worth. Old Colony Trust Company v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956).

Gain of the use and dominion of a valuable good or thing is income; there is no requirement that it be sold or converted to cash. In Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864 (1940), the Supreme Court held that a landlord-taxpayer who had come into possession and full ownership of a building erected upon his land by a lessee who had forfeited the lease and caused a reversion to the lessor was in receipt of "income." The taxpayer had claimed that "[s]uch added value [to his land] . . . can be considered . . . gain only upon the owner's *disposition* of the asset." The Court instead stated that ". . . we think that gain . . . was realized by [the taxpayer] in the year of *repossession.*" Id. at 467, 468, 60 S.Ct. at 634. (Emphasis added). And the Income Tax Regulations § 1.61–14 make it clear that no transfer or sale of a valuable thing is necessary.

█ The Buck Act "income tax," broadly defined as it is, refers to the broad generic class of taxes upon income. It does not require that the tax be denominated an income tax or that it conform to the federal income tax. If the tax in question is based upon income and is measured by that income in money or money's worth, as a net income tax, gross income tax, or gross receipts tax, it is an "income tax."

The State of Texas by Article 3.01–3.11, Title 122A, Taxation-General,[3] V.A.T.S., imposes an "occupation tax on the business or occupation of producing gas within this State." The tax is computed on the market value of the gas as and when produced. Market value is defined as the cash price received by the producer when sold at the wellhead. If the gas is not sold, it is assigned the value at which it could have been sold. There is provided a minimum tax rate per unit of volume which has the effect of putting a floor under the value of the gas for tax computation purposes. All of the gas taxes involved in this case were computed on a value in excess of the floor value; so the alternate computation method is not here involved.

Articles 4.01–4.14 impose an occupation tax on oil produced within this State. The tax is measured by a percentage of the value of all oil produced or salvaged. Again, there is provided a minimum tax rate per unit of volume which has the effect of putting a floor under the value of the oil for tax computation purposes. All of the oil taxes involved in this case were computed on a value in excess of the floor value; so the alternate computation method is not here involved.

██ The fact that the Texas taxes on oil and gas production are denominated as "occupation taxes" and not "income taxes" is not determinative of this case. An occupation tax, if measured by receipts or income, is an income tax within the meaning of the Buck Act. Howard v. Commissioners of Sinking Fund of City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), involved the Buck Act and State taxation within a federal enclave in a portion of Louisville. The State, after the cession of the area, sought to collect a state tax which was denominated by statute as a "license fee." The Court of Appeals of Kentucky had already held that the tax was *not* to be an "income tax" but a tax

---

3. Codified in 20A Vernon's Annotated Texas Statutes, Tax.–Gen. Art. 3.01. Other tax statutes herein are similarly codified and bear the same article number.

upon the privilege of working within the City of Louisville.[4] Over the dissent of Justices Douglas and Black, the Court held that it did not matter that the tax involved was not an "income tax" by Kentucky law. It emphasized that the Buck Act definition applied to *any* tax, and the word "any" was italicized in the Court's opinion. If *any* tax came within the Buck Act's *definition* of income tax, it was permissible to the State. Since the tax there involved was measured by, and levied with respect to, the income from the taxed activity, it was a Buck Act income tax even though not denominated or classified as an income tax under local law.

The dissenters in *Howard* emphasized that the Louisville tax was not [specifically] a tax on "net income, gross income, or gross receipts" as defined in the Buck Act. The Louisville tax was measured by a percentage of earned income only. As Justice Douglas wrote, "The tax is narrowly confined to salaries, wages, commissions and to the net profits of businesses. . . . Many kinds of income are excluded, e. g., dividends, interest, capital gains. The exclusions emphasize that the tax is on the *privilege* of working or doing business in Louisville." 344 U.S. at 629, 73 S.Ct. at 468. The majority adopted the broader view in the light of the apparent purpose of Congress.

■ Further, it is not controlling that the Texas taxes on oil production and on gas production reach only certain items of income and do not constitute taxes on all income. Buck Act income taxes need not be general income taxes, but may be selective income taxes as was true in Howard v. Commissioners discussed above. The legislative history supports this conclusion by reading into the term income tax a business-privilege, a tax much more limited in scope than a general income tax.

■ The Texas oil production and gas production taxes attach when these minerals have been produced and severed from the earth, when they have been reduced to possession and have come within the dominion and control of the producer. At that point there has been an inflow of wealth, an accretion to wealth, an economic gain in money or money's worth. The tax, as applied in this case, is levied on and measured by the value in money or money's worth of the minerals, whether they be sold, used, or otherwise disposed of. The tax attaches upon the receipt and is measured by the gross value of that received. This is the essence of an income tax.

Though not necessary to our decision herein, it is interesting to note that, in connection with the federal income tax, producers of oil and gas are allowed a deduction for depletion of the capital reservoir of minerals. The deduction is expressed as a percentage of the "gross income from the property." Internal Revenue Code of 1954, § 613. Gross income from the property is defined in the Income Tax Regulations, § 1.613–3, as follows:

"In the case of oil and gas wells, 'gross income from the property,' as used in section 613(c) (1), means the amount for which the taxpayer sells the oil or gas in the immediate vicinity of the well. If the oil or gas is not sold on the premises but is manufactured or converted into a refined product prior to sale, or is transported from the premises prior to sale, the gross income from the property shall be assumed to be equivalent to the representative market or field price of the oil or gas before conversion or transportation."

In the case before us, the gross income from the property with respect to the Corpus Christi Naval Air Station lease reported by Humble for federal income tax

---

4. City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248 (1948). The city was not authorized to levy an income tax, and this city "license fee" or "occupation tax" was held to be valid as not being an income tax.

depletion purposes is the same, to the dollar, as the market value of produced oil and gas from those leases reported by Humble for Texas occupation tax purposes. It is recognized that the gross income from the property is used only for depletion computation purposes and not for the purpose of determining gross income under the federal tax, but the concept is too close to the income tax for us to conclude that it falls outside the broad ambit of an income tax contemplated in the Buck Act.

As above noted, this case originally involved also the State's attempt to tax under the Regulation Pipeline Tax. The State has not brought this point forward, and apparently concedes that the Regulation Pipeline Tax is not exempt as a Buck Act tax under the authority of Mississippi River Fuel Corp. v. Cocreham, 382 F.2d 929 (5th Cir. 1969). Therefore we express no holding with respect to that case. Suffice it to say here, we regard *Cocreham* as distinguishable here because the Louisiana tax there involved was only on quantity of mineral severed.

The judgment of the Court of Civil Appeals is affirmed.