## No. C-491

**Robert E. Johnson, Margaret D. Randall and Carl N. Zinner v. The City and County of Denver, a Municipal Corporation**
(527 P.2d 883)

Decided November 4, 1974.

Quiat, Bucholtz and Bull, P.C., James C. Bull, for petitioners.

Max P. Zall, City Attorney, Gerald Himelgrin, Assistant, for respondent.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is another in a series of challenges to the city and county of Denver "occupational tax." We have heretofore held it constitutional in *Denver v. Duffy Storage and Moving Co.,* 168 Colo. 91, 450 P.2d 339 (1969). We held it to apply to railroads and employees in *Union Pacific Railroad Co. v. Denver,* 182 Colo. 136, 511 P.2d 497 (1973). In this case it is tested as to whether it applies to federal employees working in a federal enclave.

Petitioners never paid the tax, stipulated to the failure, and were prosecuted in the Denver municipal court. The court found the tax unenforceable against them, found them not

guilty, and dismissed the case. The superior court reversed. We granted certiorari.

### I.

Petitioners are federal employees working at the Air Force Finance Center. It is a federal enclave located entirely within the corporate boundaries of the city and county of Denver. Denver ceded the property to the United States in 1942. The federal government has exclusive jurisdiction there, except for the right of Colorado to serve civil and criminal process. (See Appendix A.)

The Buck Act, 4 U.S.C. § § 105-110 (1947), delegated back to the state and its political subdivisions their only taxing power within a federal area. It allows the levy of sales, use and income taxes on federal employees working in federal areas.

■■ It is agreed that the levy is not a sales or use tax and can only be assessed if it is an income tax. Petitioners claim that the tax is not and constitutionally could not be an income tax as defined by the Buck Act. Denver therefore has no jurisdiction to levy it against them. We agree.

### II.

Denver passed the Employee Occupational Privilege Tax, *Denver Revised Muncipal Code* 166C. It is more commonly called the "head tax." It levies a tax on any natural person who performs sufficient services in Denver to be paid $250 per month by "a salary, wage, commission or other compensation basis * * *." The performance of these services is considered a taxable privilege. The tax imposed is $2 a month for each and every month the employee is so employed.

We are concerned only with those pertinent sections of the Buck Act dealing with the income tax, which state in part:
"§ 106.
"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any

Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.
\* \* \* \*

"§ 108.
"The provisions of sections 105-110 of this title shall not for the purposes of any other provision of law be deemed to deprive the United States of exclusive jurisdiction over any Federal area over which it would otherwise have exclusive jurisdiction or to limit the jurisdiction of the United States over any Federal area.
\* \* \* \*

"§ 110.
"As used in sections 105-109 of this title—
\* \* \* \*

"(c) The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.
\* \* \* \*

"(e) The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency, of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State."

▮▮▮ To be an income tax within the meaning of the statute, a tax must be "levied on, with respect to, or measured by, net income, gross income, or gross receipts." We held in *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958), that the *state* General Assembly holds an exclusive, nondelegable power to levy income taxes, *Colo. Const.* Art. X, Sec. 17, and Denver, as a home rule *city,* is therefore without authority to impose *any* income tax.

In *Denver v. Duffy Storage and Moving Co., supra,* we held that the Denver head tax is *not* an income tax. It is levied on the person and the privilege of working in Denver. It bears no relation to income. No measurement is made, with the sole exception that those employees earning less than $250 per month are exempted.

▮▮▮ Petitioners' incidence of taxation, the privilege of

working, takes place within a federal enclave. Construing *Duffy* and *Sweet* together, and in the interest of *stare decisis,* we adhere to the rule that the Denver head tax is not an income tax. Since it is not, the cession forbids it. *U.S. Const.,* art. I, § 8, cl. 17. *Accord Humble Pipeline Co. v. Waggonner,* 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964); *Mississippi River Fuel Corp. v. Cocreham,* 382 F.2d 929 (5th Cir. 1967).

### III.

Respondents argue that the head tax should be defined as an income tax *for purposes of complying with* the Buck Act. They feel in this case "income tax" is a word of art, used to include a number of taxes not traditionally considered by that term. *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926 (Tex. Sup.Ct. 1972).

We find three counterarguments valid. First, if for purposes of the Buck Act the head tax is "levied on, with respect to, or measured by, net income, gross income, or gross receipts," it is clearly an income tax and would be contra to Denver's position in *Duffy, supra,* and the holding therein.

■ Second, an income tax must be graduated or proportional or it is illegal. *Colo. Const.* Art. X, Sec. 17. The head tax is $2 for every covered employee. So it would fail in any event.

Finally, in *Calvert* the tax was *measured by income.* The Denver head tax, to the contrary, is not. It is a uniform, flat fee which applies to employed persons in Denver *regardless* of amount of salary. *Calvert* does not apply. *See also Howard v. Commissioners of the Sinking Fund of the City of Louisville,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953).

### IV.

We realize the city is in a difficult position. It provides services, but is limited in how to raise revenue to pay for them. Denver argues that people who use all the facilities of Denver going to and from work should bear their fair share of the burden of paying for the services. Yet Denver just did not enact a tax which could or does touch everyone. Residents who work in outlying counties do not pay it, nor do the

retired, unemployed or others who still use Denver streets, parks and services.

■ If a change is needed to permit a tax which will bring it into line with the Buck Act, it is a legislative and not a judicial function to make that change. *Duffy, supra.*

Consequently we hold that Denver may not charge the tax against federal employees working in a federal area under exclusive federal jurisdiction.

The judgment is reversed and the cause remanded to the superior court to discharge the defendants.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE HODGES do not participate.

### *APPENDIX A*

Congress has exclusive legislative jurisdiction over areas that the United States has acquired with the consent of the state in which the property is located. *U.S. Const.,* art. I, § 8, cl. 17. It makes no difference whether the land so acquired was actually purchased from, or was ceded to the federal government by, the state. *Surplus Trading Co. v. Cook,* 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1929); *Howard v. Commissioners of the Sinking Fund of the City of Louisville,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953); *Humble Pipeline Co. v. Waggonner,* 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 783 (1964); *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926 (Tex. Sup. Ct. 1972). The crucial question is whether the state has ceded exclusive jurisdiction to the federal government. *Humble Pipeline Co., supra.* If it has, then the areas are considered to be federal enclaves. Congress alone has political control. Congress must expressly and affirmatively relinquish jurisdiction in some way for the state to regain control. *Howard, supra.*

There are two notable exceptions. The United States could own land which is set aside and used for public purposes. Such ownership and use, *without more,* do not withdraw the lands from the jurisdiction of the state. The United States is merely in the position of any other proprietor doing business within the state. 2 *Story, Constitution* § § 1214-1235 (5th

ed. 1891); *Fort Leavenworth R.R. v. Lowe,* 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885); *Surplus Trading Co., supra.*

The second exception is when a state governmental entity, although giving up land and jurisdiction, specifically reserves powers to itself which do not impair the use of the land for the proposed federal purpose. *Fort Leavenworth R.R., supra; James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). However, only the powers specifically reserved by the state can be exercised by it. *Collins v. Yosemite Park & Curry Co.,* 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938).

Neither exception applies to this case. Without question, the Air Force Finance Center is a totally federal enclave. Colorado reserved no powers except the right to serve process. Therefore, by virtue of the constitutional provision, the United States has exclusive jurisdiction within the federal area. Colorado may not legislate in there without federal permission.

For a history of the precedent-setting cases, *see Surplus Trading Co., supra. See also* Note, *Land Under Exclusive Federal Jurisdiction: An Island Within A State,* 58 *Yale L.J.* 1402 (1949); Note, *Federal Areas: The Confusion of a Jurisdictional-Geographical Dichotomy,* 101 *U.Pa. L.Rev.* 124 (1952).