## No. 27990

**Ben Rountree, Clarence Chapman, Kenny Heinz, Guy Iuppa, Robert Johnson, Manual D. Salazar, R. N. Madrill, and M. L. Croucher v. The City and County of Denver, a Municipal Corporation**

(596 P.2d 739)

Decided May 14, 1979. Rehearing denied July 16, 1979.

498

Douglas R. Phillips, for plaintiffs-appellants.

Max P. Zall, City Attorney, Donald E. Wilson, Assistant, for defendant-appellee.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

Eight residents of the City and County of Denver, all employees of the United States Postal Service [Postal Service], brought an action in Denver District Court, praying for an injunction to restrain the City and County of Denver from levying and collecting from them its Employee Occupational Privilege Tax, pursuant to Article 166C of the Denver Revised Municipal Code. This tax is commonly referred to as Denver's "head tax," but it is not, in fact, a *per capita* tax as its popular name implies. Rather, it is an employment or occupation tax by which Denver imposes a $2 per month tax on every natural person who performs sufficient services in Denver to be paid $250 per month by a "salary, wage, commission or other compensation basis. . . ."

Plaintiffs Salazar, Madrill, and Croucher work and are officially stationed at the Main Post Office and the south Denver Station, federally' owned enclaves over which the United States exercises exclusive jurisdiction and control.[1] Plaintiffs Rountree, Chapman, Heinz, Johnson and Iuppa work and are officially stationed at branch offices located in various places within Denver.[2] These branch offices are on sites leased by the Postal Service, over which the State of Colorado and the City and County of Denver exercise political jurisdiction. The parties agree that the Postal Service is an agency, establishment or department of the United States Government and that the plaintiffs are federal employees.

Relying on *Johnson v. City and County of Denver,* 186 Colo. 398, 527 P.2d 883 (1974), the district court granted a permanent injunction restraining the levy and collection of Denver's occupation tax from those plaintiffs working at the Main Post Office and the South Denver Station, the federal enclaves. It denied the injunction as to those plaintiffs working at the branch offices, concluding that such an injunction would be

---

[1] *See Johnson v. City and County of Denver,* Appendix A, 186 Colo. 398, 527 P.2d 883 (1974), for a discussion of the legal characteristics of a federal enclave.

[2] These five latter plaintiffs originally filed the present action. Upon defendant's motion to add parties, Salazar, Madrill and Croucher were added as party plaintiffs.

inconsistent with the purposes of the Buck Act, 4 U.S.C. §§ 105-110 (1976),

"which was enacted in order to broaden the tax base of municipalities by allowing certain taxes of the income, sales and use type to be levied and collected based upon *transactions or performances occurring within enclaves,* and, further, being inconsistent with the historical development of the legislative and case law pertaining to such levies. [Citations omitted.]"

The plaintiffs working at branch offices appeal, claiming the injunction should apply equally to them. Denver cross-appeals, claiming it should not be enjoined from levying and collecting its occupation tax, even from those plaintiffs working on federal enclaves.

■ This case presents a fresh opportunity to examine and interpret the meaning of the term "income tax" as used in the Buck Act. Previously we have held that Denver's occupation tax is not an income tax under the Buck Act. Today we reject that interpretation and reverse the order of the district court granting the permanent injunction, holding that Denver's occupation tax is an income tax under the Buck Act. In doing so, we overrule, in part, the *Johnson* decision.

I.

At the threshold, we note that we agree with the district court's conclusion that all plaintiffs here work on a federal area as defined in § 110(e) of the Buck Act:

"§ 110. Same; definitions

"As used in sections 105-109 of this title —

"(e) The term 'Federal area' means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State."

Certainly, the Main Post Office and the South Denver Station, both federal enclaves, are federal areas within the Act. The parties have agreed that the branch offices are also "held or acquired by or for the use of the United States Postal Service," within the § 110(e) definition. Therefore our starting point is that the Buck Act must be uniformly applied to all plaintiffs: Either Denver's occupation tax may be levied and collected from the enclave employees *and* the branch office employees, or it may be levied and collected from none of them.

II.

■ The Buck Act provides that any state or "any duly constituted taxing authority therein," such as Denver, may levy and collect sales, use or income taxes from any federal employee working or residing on a fed-

eral area. 4 U.S.C. §§ 105, 106 (1976).[3] It is conceded that Denver's occupation tax is not a sales or a use tax within the Buck Act. The limited issue before us then is whether Congress intended to include a tax such as Denver's occupation tax within its definition of ''income tax'' as expressed in § 110(c):

"§ 110. Same; definitions

"As used in sections 105-109 of this title —

"(c) The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts."

In *Johnson* we answered this question in the negative. In that case Denver had levied the occupation tax against federal employees working at the Air Force Finance Center, a federal enclave located entirely within the boundaries of the City and County of Denver. The employees had refused to pay the tax. On appeal they claimed that the tax was not and constitutionally could not be an income tax as defined by the Buck Act. We agreed with that contention.

This court said in *Johnson* that the occupation tax had already been determined not to be an income tax under the Colorado Constitution, Art. X, Sec. 17, in *Denver v. Duffy Storage and Moving Co.,* 168 Colo. 91, 450 P.2d 339 (1969) and *Denver v. Sweet,* 138 Colo. 41, 329 P.2d 441 (1958). In those cases we held that the Colorado General Assembly holds an exclusive, nondelegable power to levy income taxes under our state constitution.

We then went on to hold that the occupation tax was also not an income tax under the Buck Act. We gave three reasons. Our first and primary reason was that such a finding would be inconsistent with *Duffy* and *Sweet.* We also said that the tax failed as an income tax because it was not graduated or proportional, as required by Art. X, Sec. 17 of the Colorado Constitution. Finally, we said that the tax was not "measured by income" as required by the Buck Act itself, but was instead "a uniform, flat fee which applies to employed persons in Denver regardless of amount of salary." *Johnson v. City and County of Denver, supra,* at 402, 527 P.2d at 885.

■ Today, because of subsequent developments, both statutory and in the case law, we depart from our position in *Johnson* and hold that Denver's occupation tax is an income tax under §110(c) of the Buck Act. In so doing we adopt a broad interpretation of the Buck Act, and we find

---

[3] Section 106, pertinent to this issue reads:

"§ 106. Same; income tax

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

that the occupation tax falls within *its* statutory definition of income tax.

■ In reaching this result, we distinguish between the normal definition of the the term "income tax" as it has been used in prior decisions of this court (except *Johnson*) and a definition of income tax for the limited purpose of construing the Buck Act. The cases and state constitutional provisions relied upon in *Johnson* are inapplicable to our present holding, and we leave intact the principles of state law expressed therein. We overrule only that portion of *Johnson* which construes the Buck Act restrictively and holds that Denver's occupation tax is not an income tax within the Buck Act.

■ We are not alone in finding that "income tax" can have a dichotomous definition. In *United States v. Lewisburg Area School District,* 539 F.2d 301 (3rd Cir. 1976), the Court of Appeals for the Third Circuit found a Pennsylvania occupation tax to be an "income tax" under the Buck Act, even though it is not under state or federal income tax laws. It said:

"[M]any state taxes which are not denominated as income taxes and which do not conform to the federal income tax have been held to be income taxes for the purposes of the Buck Act." *Id.* at 309.

*Accord, Howard v. Commissioners of the Sinking Fund,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953); *Humble Oil and Refining Co. v. Calvert,* 478 S.W.2d 926 (Texas 1972).

■ Several factors have convinced us that this dichotomous definition is warranted here. First the historical development of the Buck Act requires that it be interpreted broadly. One year prior to its enactment, the United States Supreme Court decided the landmark case of *Graves v. People of New York ex rel. O'Keefe,* 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939), solving the great controversy over whether federal employees could be subject to state taxation. The Supreme Court held that state taxes on the salaries of federal employees were not barred by the constitutional immunity accorded federal instrumentalities. *Id.* at 483-84, 59 S.Ct. at 600, 83 L.Ed. at 935.

In the same year as the *Graves* decision, Congress passed the Public Salary Tax Act of 1939,[4] expressly consenting to state taxation "of pay or compensation for personal service" of federal employees. The Buck Act was enacted the following year which broadened the taxing base of the states and their "duly constituted taxing authorit[ies]" and subjected *all* federal employees living within the geographical perimeter of a state — even those living and residing on federal enclaves — to state income taxation. *United States v. Lewisburg Area School District, supra; Kiker v. city of Philadelphia,*346 Pa. 624, 31 A.2d 289 (1943). Thus, its purpose

---

[4] 4 U.S.C. §111 (1976) (formerly 5 U.S.C. §84a, April 12, 1939, ch. 59 §4, 58 Stat. 575).

was to provide that federal employees would pay the same taxes in the area in which they lived or worked as all other employees, so long as no discrimination against federal employees resulted. It therefore seems clear to us that Congress intended the Buck Act to be interpreted liberally enough to effectuate that purpose.

Subsequent legislation not before us in *Johnson* further supports our dichotomous definition. In 1974, Congress enacted Pub. L. No. 93-340 [as amended, now 5 U.S.C. §5520(1979 Cum. Supp.)] an act to assist federal employees to meet their tax obligations under city ordinances.[5] The caption of the statute read: "Withholding of city income *or employment taxes*" [emphasis added].[6] The statute provides a procedure by which the federal government shall withhold city income and *employment taxes* for the benefit of the taxing cities.

■ Denver's occupation tax is such an employment tax. As we explained in *Johnson, supra:* "The performance of . . . services [in Denver] is considered a taxable privilege." Therefore by the plain language of Pub. L. No. 93-340, the occupation tax is included in its statutory withholding scheme.

The plaintiffs argue, however, that Pub. L. No. 93-340 has no bearing on the present case since it does not amend the Buck Act. We agree that this statute does not amend the Buck Act either directly or by implication, as Denver suggests. However, it does give us insight into Congressional intent *vis a vis* municipal taxation of federal employees. Since Congress has specifically designed a withholding procedure for municipal employment

---

[5] Pub. L. No. 93-340 was enacted and became effective July 10, 1974, 88 Stat. 294, prior to the date *Johnson* was announced, November 4, 1974. However, the statute was not brought to the attention of this court, neither by way of briefs and oral argument, nor in any supplemental authority. Therefore Pub. L. No. 93-340 was not considered by this court in deciding *Johnson*.

[6] Pub. L. No. 93-340 has been amended to provide for the withholding of *county* taxes, as well as those of cities. The statute now reads, in part:

"Withholding of city or county income or employment taxes

"(a) When a city or county ordinance —

"(1) provides for the collection of a tax by imposing on employers generally the duty of withholding sums from the pay of employees and making returns of the sums to a designated city or county officer, department, or instrumentality; and

"(2) imposes the duty to withhold generally on the payment of compensation earned within the jurisdiction of the city or county in the case of employees whose regular place of employment is within such jurisdiction; the Secretary of the Treasury, under regulations prescribed by the President, shall enter into an agreement with the city or county within 120 days of a request for agreement by the proper city or county official. The agreement shall provide that the head of each agency of the United States shall comply with the requirements of the city or county ordinance in the case of any employee of the agency who is subject to the tax and (i) whose regular place of Federal employment is within the jurisdiction of the city or county with which the agreement is made or (ii) is a resident of such city or county. The agreement may not apply to pay for service as a member of the Armed Forces. The agreement may not permit withholding of a city or county tax from the pay of an employee who is not a resident of, or whose regular place of Federal employment is not within, the State in which that city or county is located unless the employee consents to the withholding." 5 U.S.C. §5520 (1979 Cum. Supp.).

taxes, we think it would be anomalous to assume that Congress prohibited such taxation under the Buck Act. Therefore we must again conclude that our restrictive interpretation of the Buck Act in *Johnson* was erroneous.[7]

We also find authority from other jurisdictions to be persuasive on this issue. Although we have found no case identical to the one before us, other jurisdictions have interpreted the Buck Act and have chosen to interpret it broadly. *City of Portsmouth v. Fred C. Gardner Co., Inc.,* 215 Va. 491, 211 S.E.2d 259 (1975); *Humble Oil and Refining Co. v. Calvert, supra. See also, Howard v. Commissioners of Sinking Fund, supra.*

We especially find persuasive the case of *United States v. Lewisburg Area School District, supra.* In *Lewisburg,* the Third Circuit Court of Appeals reviewed the history of the Buck Act. It quoted portions of the Senate Report on the bill demonstrating that the intent of the Senate committee was to include in the Act:
"any State tax (whether known as a corporate franchise tax, a business-privilege tax, or any other name) if it is levied on, with respect to, or measured by net income, gross income, or gross receipts." *Id.* at 309.
Applying a broad interpretation of the Buck Act, the court held that a Pennsylvania school district could collect as an "income tax" under the Buck Act an occupation tax from federal employees and their dependents residing on a federal enclave.

 Having now decided that "income tax" as used in the Buck Act requires a broad interpretation, we finally must determine whether Denver's occupation tax is "levied on, with respect to, or measured by, net income, gross income, or gross receipts," within the language of §110(c). We think that it is. We said in *Johnson* that the Denver occupation tax is

---

[7] This conclusion is bolstered by two aspects of Pub. L. No. 93-340 judicially noticed by the district court. The first is a special agreement entered into between the U.S. Department of Treasury and Denver's Manager of Revenue. The agreement added paragraph (f) to the "standard agreement" found at 31 C.F.R. 215 which was itself promulgated to effectuate Pub. L. No. 93-340, pursuant to section 4 of Executive Order 11997, June 22, 1977 (42 FR 31759). Paragraph (f) prohibited the levy and collection of Denver's occupation tax from U.S. Postal employees working on federal enclaves. It was included to specifically accommodate the Johnson decision.
The second factor is found at 120 Cong. Rec. §21209-10 (daily ed., June 26, 1974). The Congressional Record contains a discussion between Senator Haskell of Colorado and Senator McGee, the presiding officer, concerning Pub. L. No. 93-340 (then H.R. 8660):
"MR. HASKELL. Mr. President, the city of Denver does not impose an income tax, since it cannot under the Colorado constitution. It does impose an employee occupational privilege tax on all employees earning more than $250 per month. I would like to ask the chairman of the committee if it is the intention of the Committee on Post Office and Civil Service that taxes such as the Denver employment tax be covered by this withholding act.
"MR. McGEE. We did not deal directly with the matter of the Denver tax. But the bill clearly applies to withholding of city income or employment taxes. Further, the committee, if anything, leaned toward a broad interpretation of the bill. We have asked the Treasury Department to report on the ramifications of extending it to smaller cities and other local jurisdictions. It certainly was not our intention to exclude Denver."

not proportional or otherwise graduated, as it must be to be an income tax under state and federal income tax laws. Yet, applying the Buck Act's broad definition of income tax, discussed *supra,* the tax is certainly levied "with respect to . . . net income, gross income, or gross receipts." As discussed *supra,* it is an employment or occupation tax, imposed only on natural persons who earn income, be it by a "salary, wage, commission or other compensation basis. . . ." Thus, persons who do not earn income are not taxed under this ordinance. And, contrary to our assertion in *Johnson,* we believe the occupation tax is even "measured by" income in that it excludes from taxation any employee in Denver earning less that $250 per month. That requisite minimum amount provides a measure by which to gauge which employees are subject to the tax and which are not.

We therefore hold that Denver's Employee Occupational Privilege Tax is an income tax for purposes of the Buck Act. The order of the trial court granting the permanent injunction as to the federal enclave employees is reversed. The remainder of the judgment below is affirmed. Since *Johnson* directly exempted federal enclave employees from the operation of the occupation tax and seemed to dictate a result different from the one we reach here as to other federal employees, we feel compelled, in the interest of fairness, to make our ruling today prospective in operation from this date. *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

MR. JUSTICE LEE, MR. JUSTICE ERICKSON and MR. JUSTICE ROVIRA concur in part and dissent in part.

MR. JUSTICE ROVIRA concurring in part and dissenting in part:

I cannot agree that the Denver occupational tax or "head tax" is an income tax for purposes of bringing it within the meaning of the Buck Act and yet is not an income tax within the meaning of Colorado constitutional and statutory provisions. *Denver v. Duffy Storage and Moving Co.,* 168 Colo. 91, 450 P.2d 339 (1969); *Johnson v. Denver,* 186 Colo. 398, 527 P.2d 883 (1974).

The passage of Public Law 93-340 does not convert the Denver occupational tax into an income tax as that term is defined in the Buck Act, 4 U.S.C. §110.

The Congress has clearly set out in the Buck Act that city and state income taxes must be paid by those residing within a federal area or receiving income from transactions occurring or services performed in such areas. 4 U.S.C § 106. To the same effect, sales and use taxes were permitted to be collected by city and state government. 4 U.S.C. §105.

If the Congress wishes to allow the Denver occupational tax to be collected from federal employees, as the majority opinion indicates, then a

simple, straight forward amendment of the Buck Act would accomplish that purpose.

I find it incongruous that in 1974 we rejected, by a unanimous court (Pringle, C.J., and Hodges, J., not participating), the contention of Denver that "the head tax should be defined as an income tax for *purposes of complying with* the Buck Act", and today, because of the passage of Public Law 93-340, accept that very argument.

The reliance on *United States v. Lewisburg Area School District* by the majority does not add strength or validity to the opinion. The occupation tax in *Lewisburg* was determined by three methods of assessing occupations and is far different from the two dollar per person tax of Denver.

I agree with the majority opinion in section I.

I would affirm the trial court's granting the permanent injunction as to the federal enclave employees and reverse the trial court's judgment denying the injunctive relief sought by the plaintiffs working at the post office branch offices.

I am authorized to say that MR. JUSTICE LEE and MR. JUSTICE ERICKSON join with me in this concurrence and dissent.