**UNITED STATES of America, Plaintiff,**

v.

**The CITY AND COUNTY OF DENVER, a Municipal Corporation, Defendant.**

**Civ. No. 81–DW–89.**

United States District Court,
D. Colorado.

Nov. 3, 1983.

---

4. *Id.* at 441 n. 10.

Edward J. Snyder, Richard Correa, U.S. Dept. of Justice, Tax Division, Washington, D.C., Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Donald E. Wilson, Asst. City Atty., Denver, Colo., for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter involves a dispute concerning the applicability of Denver's Employee Occupational Privilege Tax (the tax) to civilians employed by the United States Air Force at Lowry Air Force Base.[1] The City and County of Denver (Denver), defendant, has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b). The United States (the Government), plaintiff, has opposed that motion and also has moved for summary judgment against Denver. Denver has opposed the Government's motion for summary judgment. After having read the memoranda submitted by the parties, the court heard oral argument on both motions on October 6, 1983.

The tax at issue here was enacted by Denver in 1968. It provides that "there shall be collected monthly from ... each employee who performs services within Denver for any period of time in a calendar month for an employer, an employee's occupational privilege tax, at the rate of two dollars ($2.00) per month...." *Denver, Colo. Rev. Municipal Code* § 53–241 (1983). An "employee" is defined as "any natural person who performs sufficient services to receive as compensation therefor no less than two hundred fifty dollars ($250.00) per calendar month, for an employer within the city...." *Id.* § 53–240(1). Denver asserts that civilian employees of the United States who work at Lowry Air Force Base[2] and who earn no less than two hundred fifty dollars per month are subject to the tax.

Colorado by statute ceded title to and exclusive jurisdiction over Lowry Air Force Base to the United States.[3] The United States asserts that since it has exclusive jurisdiction over the area,[4] Denver is precluded from assessing its Employee's Occu-

---

1. The case originally was assigned to Judge Fred M. Winner, United States District Court for the District of Colorado, but was reassigned to this court after Judge Winner recused himself. Designation of District Judge for Service in Another District Within His Circuit (entered by Chief Judge Oliver Seth, United States Court of Appeals for the Tenth Circuit on July 11, 1983).

2. Denver's claim is limited to those employees who work on that portion of Lowry Air Force Base that is within the boundaries of Denver.

3. *See,* C.R.S. § 3–1–103 (1973); Complaint, Ex. A.

4. U.S. Const. art. I, § 8, cl. 17 provides:
   "The Congress shall have Power ... To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles

pational Privilege Tax against federal employees who work at Lowry Air Force Base.

Denver advances four arguments in support of its motion to dismiss the Government's complaint. First, Denver argues that no justiciable controversy exists because the United States has no interest in whether its employees must pay the tax. The employees' interest in not paying the tax, however, is not the sole interest asserted by the United States. In addition, the United States has alleged that the tax infringes upon its sovereignty over Lowry Air Force Base, Complaint, ¶ 13, C, because Denver "lacks authority to levy any tax on an area under the exclusive jurisdiction of the United States." *Mississippi River Fuel Corp. v. Cocreham*, 382 F.2d 929, 938 (5th Cir.1967), *cert. denied*, 390 U.S. 1014, 88 S.Ct. 1264, 20 L.Ed.2d 164 (1968).

■ The tax is an excise on the privilege of earning money in Denver. *Johnson v. City and County of Denver*, 186 Colo. 398, 527 P.2d 883, 885 (1974), *rev'd in part on other grounds, Rountree v. City and County of Denver*, 197 Colo. 497, 596 P.2d 739, 742 (1979). In this instance, that privilege is exercised in an area subject to the exclusive jurisdiction of the United States.

> Exclusive jurisdiction as used in Article I means that not only is federal property immune from taxation but [also] that state laws which have not been explicitly or implicitly adopted by the United States, including tax laws to which the United States has not consented, are ineffective over persons or property on the enclave.

*United States v. Lewisburg Area School District*, 539 F.2d 301, 306 (3rd Cir.1976). The Government claims that it has not con-

sented to Denver's taxation of the exercise of the employment privilege by civilians at Lowry Air Force Base. As in the *Lewisburg* case, the "interest which the Government seeks to protect is its own exclusive rights [sic] as sovereign, and the injury it alleges is a trespass against those sovereign rights." *Id.* The United States, therefore, has an interest that it may seek to protect and this court has jurisdiction to hear that claim. *Id.;* 28 U.S.C. §§ 1345, 2201.

■ Second, Denver asserts that the Tax Injunction Act, 28 U.S.C. § 1341, bars this court from enjoining the assessment of the tax because "a plain, speedy and efficient remedy may be had in the courts of [Colorado]." 28 U.S.C. § 1341. That Act does not exclude the United States from its own courts when it asserts its own interests. *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976); *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966). The court has determined that in this case the United States is asserting its own interest. Consequently, the Tax Injunction Act does not preclude the court from rendering the relief the United States seeks. *Lewisburg*, 539 F.2d at 311.

■ Third, Denver asserts that the Government's complaint fails to state a claim upon which relief can be granted because it does not allege the residence of the civilians employed at Lowry Air Force Base. The relevance to this action of the residence of those employees is not apparent to the court. The applicability of the tax is determined by where an individual exercises the employment privilege, not by where an individual resides.[5] The Govern-

---

square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

5. The tax is levied upon "each employee who performs services *within the city*." Denver,

*Colo.Rev.Municipal Code* § 53–241 (1983) (emphasis added). By its own terms, the tax does not apply to Denver residents who do not work within the city. Thus, if the court determines that the tax cannot constitutionally be applied to federal employees who work at Lowry Air Force Base, the fact that some or all of those employees reside in Denver would not render them subject to the tax. See *Johnson v. Denver*, 186 Colo. 398, 527 P.2d 883, 885 (1974), *rev'd in part*

ment's failure to allege the residency of the civilians it employs at Lowry Air Force Base does not render deficient its complaint.

■ Finally, Denver argues that the tax is an "income tax" as defined by the Buck Act.[6] That Act provides that:

No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

4 U.S.C. § 106(a). As to "income taxes", the United States, through the Buck Act, has receded jurisdiction to the states and other local taxing authorities. Whether Denver's tax is an "income tax" is determinative of this argument, and, the court concludes, the merits of the Government's claim.

The Buck Act defines an "income tax" as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U.S.C. § 110(c). Determining whether Denver's tax is within that definition is not an easy task.

The Colorado Supreme Court has addressed that issue twice; reaching a different conclusion on each occasion. In *Johnson v. City and County of Denver*, 186 Colo. 398, 527 P.2d 883 (1974), the Colorado court cited three reasons for finding the tax not to be a Buck Act income tax. First, the court reasoned that if the tax satisfied the Buck Act definition, the tax would be an income tax under state law. That result was unacceptable because it was inconsistent with the court's prior determination in *City and County of Denver v. Duffy Mov-*

*ing and Storage Co.*, 168 Colo. 91, 450 P.2d 339, *appeal dismissed*, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1 (1969), that the tax was not an income tax. 527 P.2d at 885. Second, the court noted that under Colorado law an income tax must be graduated or proportional. Since the Denver tax was a flat two dollars per employee, the court concluded that it was not an income tax. *Id.* Finally, the court held that the tax was not "measured by income" because the levy was two dollars regardless of the employee's salary. *Id.*

In *Rountree v. City and County of Denver*, 197 Colo. 497, 596 P.2d 739 (1979), the Colorado Supreme Court relied on two arguments, both of which are advanced by Denver here, to reach its conclusion that the Denver tax is a Buck Act income tax. First, relying on the broad language used in the Buck Act to define an income tax and the Act's legislative history, the court concluded that the definition should be interpreted expansively. Thus, the court determined that Denver's tax is levied "with respect to income" because it applies only to individuals who earn income. *Id.* at 744. In addition, the court found the tax to be "measured by income" because it excludes from taxation individuals who earn less than $250 per month. *Id.* For those reasons, the court held that the Buck Act's definition of an income tax covered Denver's tax.

The *Rountree* court believed that conclusion to be supported by Congress' enactment of a withholding procedure for city income and employment taxes. *Id.* at 743; 5 U.S.C. § 5520. Although the *Rountree* court did not conclude that the withholding law amended the Buck Act, it did believe that it provided guidance in applying the Buck Act's definition of an income tax. "Since Congress has specifically designed a withholding procedure for municipal employment taxes, we think it would be anomalous to assume that Congress prohibited

---

*on other grounds, Rountree v. City and County of Denver*, 197 Colo. 497, 596 P.2d 739, 742 (1979).

**6.** 4 U.S.C. § 110(c).

such taxation under the Buck Act." 596 P.2d at 743.

■ The court has considered the *Rountree* court's rationales, as supplemented by Denver's briefs in this matter, but remains unpersuaded by them. First, the court does not believe that the enactment of the withholding procedure was intended by Congress to modify in any substantive manner the liability of federal employees for local taxes. The House Report that accompanied the legislation that added section 5520 to title 5 stated:

> Although the term "tax" is not defined in the bill, it is the intent of the committee that the new section 5520 shall apply to all *forms* of taxes *imposed upon the compensation of an employee* including, but not limited to, taxes referred to as income, wage, payroll, earnings or employment taxes.

H.R.Rep. No. 892, 93d Cong., 2d Sess. 6 (1974) (emphasis added). In addition, the House Report accompanying a bill that amended section 5520 emphasized that section 5520 was only an administrative provision.

> It should be noted that the mandatory withholding provisions of section 5520 apply only to employees "who are subject to the tax." With respect to the liability of Federal employees for payment of taxes imposed by local taxing authorities, section 111 of title 4, United States Code, provides as follows:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States, a territory or possession or political subdivision thereof, the government of the District of Columbia, or an agency or instrumentality of one or more of the foregoing, by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

H.R.Rep. No. 594, 95th Cong., 1st Sess. 3 (1977).

Moreover, the court does not believe that finding Denver's tax not to be applicable to civilians employed at Lowry Air Force Base creates the anomaly perceived by the *Rountree* court. The provisions of the withholding statute are not deprived of meaning if Denver is not permitted to tax the civilians employed at Lowry Air Force Base. The statute requires federal agencies to withhold the tax from the salaries of the employees who are subject to the tax, i.e. all federal employees who work in Denver, but not on a federal enclave. Thus, the court does not believe that enactment of section 5520 provides any support for the argument that Denver's tax is applicable to civilians employed on a federal enclave.

The court also does not believe that the legislative history of the Buck Act compels the court to conclude that Denver's tax is an income tax within the meaning of the Buck Act.[7] The Senate Report accompany-

7. The court has explored the Buck Act's legislative history thoroughly. As introduced by Congressman Buck, the legislation applied only to sales and use taxes. As such it was intended to eliminate the loophole through which individuals could avoid paying state sales and use taxes by purchasing or taking delivery of goods within federal enclaves. 84 Cong.Rec. 10,093–94 (1939). The House passed the bill without holding hearings and without debate. *Id.* The Senate Finance Committee reported the bill without holding hearings in 1939. *Id.* at 10,259. The bill was later recommitted to the Senate Finance Committee, hearings were held and the version subsequently enacted was reported in 1940. 86 Cong.Rec. 12,834 (1940). The Senate Finance Committee's report indicates that the income tax provision was added to eliminate "an inequity which has arisen under the Public Salary Tax Act of 1939." S.Rep. No. 1625, 76th Cong., 3d Sess. 3 (1940). In addition, the report indicates that the provision was intended to eliminate the distinction between federal areas in which a State and the United States exercise concurrent jurisdiction and those in which the United States exercises exclusive jurisdiction. *Id.* In both instances, the Committee illustrates the problem it sought to eliminate by citing examples in which the State taxed income, generated either by an individual's employment or by transactions occurring or services performed within a federal enclave. *Id.* Similarly, the only relevant comment made during the extremely limited floor debate on the bill was that the bill "also permits taxation of salaries by

ing the legislation reported from the Senate Committee on Finance states that the definition of income tax used in the legislation "must of necessity cover a broad field because of the great variations to be found between the different state laws." S.Rep. No. 1625, 76th Cong., 3d Sess. 5 (1940). The report, however, fails to explain the nature of the bounds imposed by the requirement that the tax be levied on, be with respect to, or be measured by net income, gross income, or gross receipts.[8]

The historical context in which the Buck Act was enacted, however, does provide guidance in interpreting those terms. In 1939, Congress passed the Public Salary Tax Act by which the "United States consent[ed] to the taxation of pay or compensation for personal service of an officer or employee of the United States" by state and local taxing authorities.[9] 4 U.S.C. § 111. Public employees who resided on federal enclaves were not affected by that law because the states lacked legislative jurisdiction to tax transactions that occurred on federal enclaves.

> For example, a naval officer who [was] ordered to the Naval Academy for duty and [was] fortunate enough to have [had] quarters assigned to him within the Naval Academy grounds [was] exempt from the Maryland income tax because the Naval Academy grounds are a Federal area over which the United States has exclusive jurisdiction; but his less fortunate colleague, who [was] also ordered there for duty and rent[ed] a house outside the academy grounds because no quarters [were] available inside, [had to] pay the Maryland income tax on his Federal salary.

S.Rep. No. 1625, 76th Cong., 3d Sess. 3 (1940). The Buck Act was intended to eliminate that disparity. *Id.*

■ The historical context in which the Buck Act was enacted indicates that Congress was legislating with respect to taxes on salaries, wages, commissions and other forms of income. Considering the statement in the Senate Report that the definition of an income tax "must of necessity cover a broad field because of the great variations to be found between the different State laws," *id.* at 5, from that perspective, it seems apparent that the variations contemplated by the Congress were variations in the name or the form of the state tax, but not variations in the substance of the tax.[10]

■ Denver's tax is not a tax on salaries, wages, commissions and other forms of income. Instead, it is a tax on the exercise of a privilege: an excise tax.[11] That fact is not altered because the tax is imposed on a privilege the exercise of which generates income or because people earning less than $250 per month are not taxed. Those characteristics do not bring Denver's tax within the definition of income tax adopted by the Congress.[12] To

---

States of persons living on military reservations." 86 Cong.Rec. 12,834 (1940). The bill passed the Senate unanimously. *Id.* at 12,835. The court finds nothing in this meager legislative history that suggests that Denver's tax clearly is within the concept of an income tax held by the Congress.

**8.** The report merely repeats the legislation's use of those terms in defining the types of taxes included. S.Rep. No. 1625, 76th Cong. 3d Sess. 5 (1940).

**9.** The Public Salary Tax Act of 1939 was intended to eliminate the need for extensive litigation between state and federal employees to determine whether the federal government's sovereign immunity prevented the states from taxing the income of federal employees. S.Rep. No. 112, 76th Cong. 1st Sess. 1–3 (1939).

**10.** "The intent of [the Senate] committee in laying down such a broad definition was to include therein any State tax (*whether known as a corporate-franchise tax, or business-privilege tax, or by any other name*) if it is levied on, with respect to, or measured by, net income, gross income or gross receipts." S.Rep. No. 1625, 76th Cong., 3d Sess. 5 (1940) (emphasis added).

**11.** "Excise. A tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." Black's Law Dictionary 506 (5th ed. 1979).

**12.** "The Congress has not yet granted local authorities the right to tax the privilege of working for or doing business with the United States." *Howard v. Commissioners of the Sinking Fund,* 344 U.S. 624, 629, 73 S.Ct. 465, 468, 97 L.Ed. 617 (1953) (Douglas, J., dissenting).

hold otherwise would emasculate the limits imposed by the Buck Act on the recession of jurisdiction to state and local taxing authorities. Every per capita tax and excise tax could be brought within the Buck Act's definition of an income tax simply by making the tax inapplicable to people with income that is less than a statutorily established minimum. Since the court cannot interpret the statute in a manner that would render it meaningless, *International Telephone & Telegraph Corp. v. American Telephone & Telegraph Co.,* 444 F.Supp. 1148, 1154–55 (S.D.N.Y.1978), it must conclude that Denver's tax is not an income tax as defined by the Buck Act.

That conclusion is supported by the decisions of other courts that have confronted this issue. All but one of the cases, of which the court is aware, in which the issue of whether a tax satisfied the Buck Act's definition of an income tax was addressed involved taxes that were levied on an individual's income and that varied as the individual's income varied.[13] In *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926 (Tex.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 234 (1972), the Texas Supreme Court concluded that a tax based upon income and measured by that income in money or money's worth was a Buck Act income tax. *Id.* at 930. In contrast, a per capita tax clearly is not within the Buck Act's definition of an income tax. *Lewisburg,* 539 F.2d at 308.

The characteristics of Denver's tax are not comparable to the characteristics of the taxes which courts have found to be income taxes for Buck Act purposes. Denver's tax is imposed on the exercise of a privilege, not on income. Moreover, the tax exacts a flat rate, not one that is measured by the taxpayer's income. These characteristics

preclude Denver's tax from being encompassed within the Buck Act's definition of an income tax.

In conclusion, the court has considered each of the arguments raised by Denver in support of its motion to dismiss and has found that they are without merit. Denver's motion to dismiss, therefore, must be denied.

The court now will address the Government's motion for summary judgment. The undisputed facts are as follows. Denver has enacted an ordinance that imposes a tax on employees who work within Denver's geographic boundaries and who earn no less than $250 per month. The United States owns and exercises exclusive jurisdiction over Lowry Air Force Base. Part of Lowry Air Force Base is located within the geographic boundaries of Denver. Civilian employees of the United States work on that part of Lowry Air Force Base which is within the geographic boundaries of Denver, and some of those employees earn no less than $250 per month.

■ The court has read the memoranda submitted by the parties on the motion for summary judgment carefully. The issues raised by that motion are nearly identical to those raised by Denver's motion to dismiss. Since the United States exercises exclusive jurisdiction over Lowry Air Force Base, Denver is precluded from assessing its occupation tax against civilians employed at Lowry Air Force Base without the consent of the United States. *Mississippi River Fuel Corp.,* 382 F.2d at 938. For the reasons set forth above, the court concludes that the Denver tax is not an income tax as defined by the Buck Act, and that section 5520 does not authorize Den-

---

**13.** *Howard v. Commissioners of the Sinking Fund,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953) (license fee measured by one percent of all salaries, wages and commissions); *United States v. Lewisburg Area School District,* 539 F.2d 301 (3rd Cir.1976) (occupation tax based on income determined by occupation); *Kiker v. City of Philadelphia,* 346 Pa. 624, 31 A.2d 289, *cert. denied,* 320 U.S. 741, 64 S.Ct. 41, 88 L.Ed. 439 (1943) (tax of one and one-half percent on all salaries, wages and commissions); *Humble Oil & Refining Co. v. Calvert,* 478 S.W.2d 926 (Tex.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 293, 34 L.Ed.2d 234 (1972) (occupation tax measured by market value of natural gas at the wellhead); *City of Portsmouth v. Fred C. Gardner Co.,* 215 Va. 491, 211 S.E.2d 259 (1975) (business license tax measured by gross receipts). The only exception is the *Rountree* decision from the Colorado Supreme Court.

ver to tax civilians employed at Lowry Air Force Base.

 Those conclusions, however, do not dispose of the summary judgment motion because Denver also has argued that even if it lacks legislative jurisdiction over Lowry Air Force Base, it may impose its tax on those civilians employed at Lowry Air Force Base who reside in Denver. Denver argues that the tax is imposed on "each employee who performs services within the city." *Denver, Colo. Rev. Municipal Code* § 53–241 (1983). Since Lowry Air Force Base is within the geographic boundaries of the city, Denver concludes that those employees are covered by the ordinance. Denver further argues that to exempt those employees who are Denver residents would create a situation in which an individual who is not required to pay the tax could vote to repeal it.

The court is not persuaded by this argument. The statutory language quoted by Denver does not alter the fact that the tax is imposed on the exercise of the employment privilege. Civilians employed at Lowry Air Force Base exercise that privilege in an area that is subject to the exclusive jurisdiction of the United States. To permit Denver to tax transactions occurring in an area subject to the United States' exclusive jurisdiction would violate the sovereignty of the United States.

Moreover, the fact that a Denver resident who works at Lowry Air Force Base could vote on the tax and yet not be subject to it is a result of the manner in which Denver has drafted its tax provision. The same situation applies to Denver residents who are employed, publicly or privately, beyond Denver's geographic boundaries. That situation, therefore, does not support the applicability of Denver's tax to civilians employed at Lowry Air Force Base.

In summary, the court has determined that Lowry Air Force Base is subject to the exclusive jurisdiction of the United States and that the United States has not consented to the assessment of Denver's tax against civilians employed there. Denver, therefore, cannot constitutionally assess its tax against civilians so employed.

Accordingly,

IT IS HEREBY ORDERED

1. That the motion to dismiss by Denver be denied.

2. That the motion for summary judgment by the United States be granted.

3. That counsel for the United States prepare and submit a proposed final judgment within ten (10) days of notice of this decision.