**COLORADO STATE BOARD OF MEDICAL EXAMINERS,**
Appellee,

v.

**Kevin P. SULLIVAN, Respondent–Appellant.**

No. 97CA2096.

Colorado Court of Appeals,
Div. I.

March 4, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Robert A. Holden, Assistant Attorney General, Denver, Colorado, for Appellee

Yu Stromberg Cleveland, P.C., Frederick Y. Yu, Karen L. Allison, Denver, Colorado, for Respondent–Appellant

Opinion by Judge CASEBOLT

Respondent, Kenneth P. Sullivan, appeals a final order of the Colorado State Board of Medical Examiners (Board) that revoked his license to practice medicine. We affirm.

Respondent obtained his Colorado license to practice medicine in 1980. While employed as a civilian physician at the Fort Carson military reservation Evans Army

Community Hospital, a federal enclave not subject to the jurisdiction of the Board, he treated a patient in the emergency room. Because of respondent's failure to ensure that the wound was properly cleaned, the patient contracted an infection and later died.

In 1996, the Board filed a formal complaint against respondent, alleging that his treatment of that patient constituted "unprofessional conduct" as defined by the then applicable version of the Colorado Medical Practice Act (MPA). *See* Colo. Sess. Laws 1987, ch. 84, § 12–36–117(1)(p) (now codified as § 12–36–117(1)(p), C.R.S.1998). After a hearing, an Administrative Law Judge (ALJ) concluded that the Board had jurisdiction over respondent. Further, finding that his treatment of the patient constituted "unprofessional conduct," the ALJ rendered an initial decision revoking respondent's license to practice medicine in Colorado.

After the Board issued a final order concurring with the ALJ's initial decision, respondent commenced this appeal.

## I.

Respondent contends the MPA does not authorize the Board to discipline physicians for acts that occur, as here, within a federal enclave which, as a matter of law, is not considered to be part of a state. Hence, he asserts that the Board exceeded its jurisdiction. We disagree.

Initially, we note that the parties have described the Fort Carson federal enclave as being "outside" the state of Colorado. While perhaps technically incorrect, we will nevertheless use that characterization for purposes of our analysis.

■ Our primary task in construing a statute is to give effect to the intent of the General Assembly by looking first at the language of the statute itself. *Colorado State Board of Medical Examiners v. McCroskey*, 940 P.2d 1044 (Colo.App.1996). If, as here, the statute is part of a comprehensive legislative program, we must, in ascertaining legislative intent, consider the entire enactment relating to the same subject matter. *See Colorado State Board of Medi-*

*cal Examiners v. Boyle*, 924 P.2d 1113 (Colo. App.1996).

■ The General Assembly has prohibited the practice of medicine in this state without a statutorily prescribed license. *See* § 12–36–111, C.R.S.1998; *State Board of Chiropractic Examiners v. Stjernholm*, 935 P.2d 959 (Colo.1997). It has granted exclusive authority to the Board to issue such licenses. *See* §§ 12–36–111 & 12–36–114, C.R.S.1998. Therefore, a physician's license to practice medicine in this state exists as a matter of legislative grace. *See State Board of Chiropractic Examiners v. Stjernholm, supra.*

The MPA gives the Board authority to issue licenses to qualified applicants and expressly grants it authority to initiate investigations and disciplinary actions against physicians licensed to practice medicine in this state who engage in unprofessional conduct. *See* §§ 12–36–114, 12–36–117, and 12–36–118, C.R.S.1998; *Colorado State Board of Medical Examiners v. Boyle, supra.*

■ Section 12–36–117, C.R.S.1998, defines "unprofessional conduct." It is not limited to acts that occur only *inside* the state of Colorado. The statute provides, for example, that unprofessional conduct includes receiving a conviction for violation of *any* federal or state law regulating the possession of a controlled substance. *See* § 12–36–117(1)(h), C.R.S.1998. It also includes the failure to report any adverse action taken against the licensee by a licensing agency in another state or country. *See* § 12–36–117(1)(y), C.R.S.1998. The statute further provides that disciplinary action taken concerning a license to practice medicine in another state, territory, or country shall be deemed to be unprofessional conduct. *See* § 12–36–117(2), C.R.S.1998.

Hence, the statute expressly includes acts occurring *outside* this state within its definition of unprofessional conduct.

The MPA authorizes the Board to implement its discipline of a physician by placing restrictions on, suspending, or revoking such license. *See* § 12–36–118(g)(III), C.R.S.1998; *Colorado State Board of Medical Examiners v. Lopez–Samayoa*, 887 P.2d 8 (Colo.1994). The MPA further provides that *"[a]ll* holders

of a license to practice medicine granted by the board" shall be accorded equal rights and privileges under all the laws of the state of Colorado, but also "shall be subject to the ... duties and obligations" defined in the MPA. Section 12–36–114(3), C.R.S.1998 (emphasis added).

We conclude that these provisions of the MPA state the intent of the General Assembly to authorize the Board to discipline physicians licensed to practice medicine in this state for "unprofessional conduct" which, by the express language of the statute, may include acts that occur outside this state. Such a construction also furthers the express purpose of the MPA to protect the citizenry against unauthorized, unqualified, and improper practice of the healing arts in this state. See § 12–36–102, C.R.S.1998.

■ Contrary to respondent's assertion, when the Board acts under that authority, it does not act extraterritorially. A law operates extraterritorially when, inter alia, it operates upon persons, rights, or jural relations existing beyond the limits of the enacting state. See Peerless Insurance Co. v. Clark, 29 Colo.App. 436, 487 P.2d 574 (1971); Black's Law Dictionary 588 (6th ed.1990).

■ When, as here, the Board disciplines a physician licensed in this state for acts that occur outside the state, the MPA operates solely upon that physician's future activities in this state and his or her license to practice medicine in Colorado. It does not prevent, by operation of Colorado law, practicing medicine in another jurisdiction. It merely restricts the use of the Colorado license within state boundaries.

■ Here, it is undisputed that respondent was licensed by the Board to practice medicine in Colorado. Therefore, he was subject to the MPA. See State Board of Medical Examiners v. McCroskey, 880 P.2d 1188 (Colo.1994). Because the Board has authority pursuant to the MPA to discipline physicians licensed to practice medicine in Colorado for acts that occur elsewhere, the Board did not exceed its jurisdiction in disciplining him.

## II.

Alternatively, respondent contends that, even if the Board has authority to discipline him for acts that occurred outside the state of Colorado, the Board may not regulate medical practice on Fort Carson because it is a military reservation under the exclusive jurisdiction of the United States. Because we conclude that the Board is not regulating medical practice on Fort Carson, we reject this assertion.

■ Congress has exclusive legislative jurisdiction over land that the United States has acquired with the consent of the state in which the property is located. See U.S. Const. art. I, § 8. If a state has ceded exclusive jurisdiction to the United States, then such an area is considered to be a federal enclave. As to such an enclave, Congress alone has political control of it and must expressly and affirmatively relinquish jurisdiction in some way for the state to regain control. See Johnson v. City & County of Denver, 186 Colo. 398, 527 P.2d 883 (1974).

■ Here, it is undisputed that Fort Carson is a federal enclave, and that Colorado reserved no powers except the right to serve process there. See § 3–1–103, C.R.S.1998. Therefore, the United States has exclusive jurisdiction within that area, and Colorado may not adopt legislation that applies there without federal permission. See Johnson v. City & County of Denver, supra%.

■ However, contrary to respondent's contention, the Board does not regulate or legislate as to medical practice within Fort Carson by disciplining respondent for acts occurring there. Rather, as analyzed above, its order operates solely upon respondent's license to practice medicine in Colorado. Respondent may practice medicine within Fort Carson, or any other federal enclave, provided he meets federal requirements, regardless of any action taken by this Board. Therefore, the Board's revocation of respondent's license does not infringe on the exclusive

jurisdiction of the United States within Fort Carson.

The order is affirmed.

Judge METZGER and Judge TAUBMAN concur.